[Civ. No. 1003.   Third Appellate District.—January 13, 1913.]

ARTHUR L. WHITNEY, Doing Business Under the Name of C. E. Whitney & Co., Appellant, v. A. ARONSON, Respondent.

LEASE OF OFFICE BUILDING—COVENANT OF LESSOR TO SUPPLY HEAT DURING "WINTER MONTHS"—AMBIGUITY—PAROL EVIDENCE—"COLD SEASON."—In a lease of an office building, where the lessor covenanted to supply heat during the "winter months," such phrase is ambiguous, and parol evidence is admissible to show that it was not the intention of the parties to refer to what technically is called the "winter months," but that it was their intention that the tenants should be supplied with heat during the "cold season," so as to render the tenants comfortable, and retain them in their

offices, and to show the standard degree of heat required in an office building to supply the tenants with heat and make them comfortable during the "cold season." In the common language of the people, the "winter months" are the "cold months."

ID.—INTERPRETATION OF AMBIGUOUS CONTRACT—REASONABLENESS AND JUSTICE.—An ambiguous contract is to be interpreted in the sense in which the promisor believed at the time of making it that the promisee understood it, and in the light of the acts of the parties done under it, and of the circumstances surrounding them and known to both of the parties when it was made, and so as to render its construction reasonable, fair, and just.

ID.—ERROR IN STRIKING OUT EVIDENCE OF STANDARD TEMPERATURE.— Where a witness had testified that the standard temperature of heat required in office buildings during the cold season was about seventy degrees, it was error to strike it out. Such evidence was properly interpretative of the degree of temperature required in the office building in question.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

N. A. Eisner, and C. H. Oatman, for Appellant.

Hugo K. Asher, for Respondent.

BURNETT, J.—The controversy is between a lessor and lessee. The former insists that rent is due, and the latter, that by reason of the lessor's failure to keep a certain covenant the lease has been terminated and the lessee absolved from any further obligation. The covenant in question is as follows: "That the lessor agrees to supply the premises with heat during the winter months without cost to the lessee." It is claimed by the lessor that this covenant called for "heat" only during the months of December, January, and February and that the term could not be extended by parol testimony. On the other hand, the lessee sought to introduce evidence that the intention of the parties was to provide for the cold season and not simply for the said three months. The learned trial judge agreed with the contention of the lessor and held that the parties had definitely and clearly expressed their intention in writing and they must thereby abide, and he there-

fore sustained an objection to questions asked with a view
of showing that the parties attributed a more comprehensive
meaning to the term employed and that the lessor actually so
treated the contract and also that there was a failure to sup-
ply heat when needed in other cold months.

Assuming that the expression was ambiguous or uncertain,
then, it is not disputed that "it must be interpreted in the
sense in which the promisor believed at the time of making it
that the promisee understood it." (Civ. Code, sec. 1649,)
It is also, of course, well settled that "When the meaning of
the language of a contract is considered doubtful, the acts of
the parties done under it afford one of the most reliable
clews to the intention of the parties." (*Rockwell* v. *Light,*
6 Cal. App. 563, [92 Pac. 649]; *Hill* v. *McKay,* 94 Cal. 5,
[29 Pac. 406].)

If the covenant in question admits of varying constructions
there is another rule also to be kept in view, stated by Mr.
Justice Shaw, in *Stein* v. *Archibald,* 151 Cal. 223, [90 Pac.
537], as follows: "It is a well settled principle applicable to
the construction of contracts that where one construction
would make the contract unreasonable, unfair, or unusual and
extraordinary, and another construction, equally consistent
with the language, would make it reasonable, fair and just,
that the latter construction is the one which must be adopted.
It is also a principle of construction, with respect to ambigu-
ous contracts, that the circumstances surrounding and known
to both parties at the time of the execution of the contract
may be taken into consideration in determining the meaning
to be conveyed."

Reverting now to the expression used, can it be said to
involve any uncertainty or ambiguity? I am of the opinion
that this should be answered in the affirmative for the reason
that it does not appear whether the term "winter months"
was used in a technical or popular sense. In the common
language of the people the "winter months" are the *cold*
months, but when they use the language with greater scientific
accuracy they mean the months of December, January, and
February. The astronomer, on the other hand, would say
that the winter, north of the equator, lasts from the winter
solstice, about December 21st, till the vernal equinox, about
March 21st. One of the definitions given in Webster's New

International Dictionary of the word "winter" is "the season of the year, in any region, in which the noonday sun shines most obliquely; the coldest season of the year; hence, fig., cold weather." In common parlance the word "winter" is generally so used. In fact, ·in ordinary conversation, it is perhaps seldom that the term "winter months" is used with the limitation contended for by respondent.

I think, therefore, that it cannot be said that the term reveals, definitely · and clearly, the intention of the parties · so as to exclude parol evidence.

Of course, if we are permitted to invoke the rule of reason or probability, there can be no question as to the result. It is not likely that the lessee of an office in the city of San Francisco containing a heating plant would be satisfied with an agreement on the part of the lessor to operate that plant and furnish heat to the office during the months of December, January, and February only. If the heat were confined to those months it would not be disputed by one familiar with the climate there that, during a considerable period of time, the office would be untenantable. It is to be supposed that the parties had in view the necessities of the situation and framed their agreement accordingly. Indeed, it does appear, from the following testimony of defendant, that he construed his covenant as conveying this larger and more reasonable signification: "Mr. Eisner. Q. During what months did you supply heat for that building? Mr. Aronson. A. Any time when it is cold. Q. Any time when it is cold? A. Yes, sir. That is the orders the men have got. We are not stingy with oil. Q. You are accustomed at all times to supply heat? A. Yes, sir."

But, as already indicated, the court took a different view of the contract and it cannot be said that this did not affect the result to the prejudice of plaintiff.

Another ruling of the court in this connection demands consideration. William E. Leland, an expert witness for plaintiff, was asked these questions: "What is the standard temperature of offices that are required to be heated?" and "What is the standard temperature of office buildings?" The court sustained an objection to each, stating, "There is no standard." The agreement was to furnish heat and that the premises were to be used for offices. The degree of heat

was not specified but it is apparent that the only fair construction of the provision is that plaintiff was to furnish sufficient heat for the contemplated use. It would not do to say that any degree of heat would satisfy the requirement of the contract. It would be equally unreasonable to hold that an excessive amount could be demanded by the tenant. There is also, undoubtedly, a difference in the degree of heat required by different persons to produce comfort and, likewise, there is a difference in the requirement for an office and for premises occupied for other purposes. It would seem that there must be some measure or test to apply to the covenant in question to determine whether it has been observed. It must be the degree of heat generally recognized and approved by the class of persons engaged in that particular business or, what is probably the same thing, the amount of heat to make him comfortable, required by the average person occupying such a building for a similar purpose. The witness had testified, but the testimony was stricken out, that the standard temperature was about seventy degrees. There would probably be no dissent from this and unless the court is to take judicial notice of it as a matter of general notoriety, I think the answer of the witness should have been allowed to stand.

Some other interesting questions are discussed by counsel but it is deemed unnecessary to notice them at this time. I think the judgment and order should be reversed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.