[Civ. No. 981. Third Appellate District.—April 19, 1913.]

## A. L. MORSE et al., Respondents, v. J. TOCHTERMAN et al., Appellants.

LANDLORD AND TENANT—CONSTRUCTION OF LEASE—PAROL EVIDENCE.—
The words "ready for occupancy," in a lease of part of a building not yet completed, providing that the premises will be ready for occupancy at a specified date, are subject to explanation by parol evidence if their meaning is uncertain, under the rule that where a writing does not show upon its face that it was intended to express the whole agreement between the parties, parol evidence is admissible to show other conditions or latent ambiguities.

ID.—FAILURE OF LESSOR TO PUT PREMISES IN CONDITION FOR OCCUPANCY—WAIVER BY LESSEE.—Where a lessee of part of a building in process of construction goes into possession before the premises are ready for occupancy, in reliance on the lessor's promise that he will finish them, but the lessor fails to keep his promise, and therefore the lessee abandons the premises, the lessee is liable for rent during the period of his possession, but no longer. While taking possession before the premises were in readiness involved a waiver by the lessee of the breach of the lease in that respect, such waiver ceased to operate upon him after he abandoned the premises because of the lessor's failure to fulfil his promise.

ID.—EVICTION—NEGLECT OF LESSOR TO KEEP PREMISES IN CONDITION.—
The neglect of a landlord to keep the premises in a condition suitable to the purposes for which they were rented may be treated as an eviction by the tenant and he may refuse to pay rent.

ID.—FAILURE OF LESSOR TO LAY SIDEWALK.—If the lessor, among the other engagements involved in the covenant to put the premises in a condition to be "ready for occupancy," agreed to lay a cement sidewalk in front of the premises, and, having failed to do so before the tenants took possession, promised the latter that he would build

such walk within a reasonable time after they entered into possession, and neglected to so lay the walk, the tenants were justified in abandoning the premises and refusing to pay further rent.

ID.—AGREEMENT TO SUPPLY HEAT—CONSTRUCTION—INSTRUCTIONS.—In an action for rent wherein the defense is made that the lessor did not furnish heat as agreed, it is error, where the lease demises the premises "with appurtenances, including water, light and heat," to instruct the jury that "the lease in this case was for the occupation of a room in a building heated by steam, and under the terms of the lease the defendants were entitled, without additional charge or expense, to have such room supplied with heat from the heating plant on the premises, and it was the duty of the landlord, the plaintiff in this case, to use reasonable care and keep such steam-heating plant in good repair, and to furnish the defendants' room, so leased, such heat as the plant would furnish to it, when used and worked with ordinary care."

ID.—FAILURE TO SUPPLY HEAT—CAUSE IMMATERIAL.—If the lessors, for any reason which it was in their power to control, failed to perform their obligation to furnish the lessees with a proper amount of heat, such failure constituted a breach of their covenant for which the lessees were justified in abandoning the premises and withholding the payment of the rent reserved. Whether such failure might have been due to the want of capacity in the heating plant to produce the requisite amount of heat or to some other cause, is wholly immaterial.

ID.—HEATING PREMISES—CONFLICTING TESTIMONY.—If the testimony is distinctly conflicting upon the question whether the heat furnished the lessees by the lessors was sufficient to produce the necessary warmth in the store to render the premises comfortable to the employees and customers during cold weather, the finding of the jury is conclusive on appeal.

APPEAL from a judgment of the Superior Court of Modoc County and from an order refusing a new trial. Clarence A. Raker, Judge.

The facts are stated in the opinion of the court.

Henry G. W. Dinkelspiel, John R. Jones, Jamieson & Wylie, and J. H. Stewart, for Appellants.

Cornish & Robnett, for Respondents.

HART, J.—This is an action to recover the sum of three hundred and fifty dollars which is alleged to be due from the

defendants to the plaintiffs for rent under the terms of a lease, whereby the latter demised to the former certain premises situated in Alturas, Modoc County, for the term of two years, at the monthly rental of fifty dollars, payable in advance on the first day of each month during the continuance of the term.

The complaint states that the lease was executed on the twenty-ninth day of April, 1910; that, on or about the first day of June, 1910, the defendants entered into the possession of said premises under said lease, and that they failed and refused to pay the stipulated rent for the months of October, November, and December, 1910, and for the months of January, February, March, and April, 1911.

The lease is set out in full as a part of the complaint, and it appears therefrom that the premises therein mentioned and described consisted of a storeroom on the ground floor of a hotel which was, at the time of the execution of the lease, in process of construction but still uncompleted. The defendants leased the room for the purpose of conducting therein the business of selling men's furnishing goods. The lease provided for the taking of possession of said room by the defendants on the first day of June, 1910, "at which date," so the indenture reads, "the parties of the first part agree that said room will be ready for occupancy." It is further provided thereby that the parties of the first part will furnish the lessees with water, light, and heat during the term of the lease.

The answer admits that the defendants have failed and refused to pay to the lessors the rent provided for by the lease for the months named in the complaint; alleges that, although the premises were not then "ready for occupancy," within the meaning of that covenant of the lease, the defendants, nevertheless, entered into the possession thereof on the seventh day and not on the first day of June, 1910, as the complaint alleges; that they so took possession under a promise by the lessors that they would immediately thereafter complete the room in all respects so that it would be in a condition to be occupied and used for the purpose for which the defendants leased and intended to use it; that the plaintiffs failed and neglected to so prepare said room as to render it suitable in all particulars to the business which the defendants desired to maintain and carry on therein, and failed to furnish proper

light and heat therein; that by reason of the neglect of the plaintiff to complete the premises and to furnish therein proper light and heat they "became wholly unfit and not suitable for occupancy by these defendants, and that by reason of said condition of said leased premises, caused and produced by plaintiffs' breach of said contract and lease, and their failure to carry out and perform their covenants and agreements, these defendants could no longer occupy said leased premises, and thereupon, about the seventeenth day of January, 1911, these defendants were compelled to remove from said leased premises and thereupon delivered possession thereof to said plaintiffs, and ever since said last named date have remained out of the possession of said leased premises." It is averred that the defendants have suffered damage to their business by reason of the alleged breach of the lease by the plaintiffs in the particulars described in the sum of five hundred dollars.

The defendants also filed a cross-complaint in which they charge that, in the month of January, 1911, while the defendants were occupying said room, the plaintiffs "negligently and carelessly caused, suffered and permitted water to flow into said leased room and premises, through the ceiling and sides thereof, and to saturate, wet, injure and destroy defendants' goods as aforesaid, to their damage in the sum of fifty dollars"; that thereafter, and on the sixteenth day of January, 1911, from like cause and through the carelessness and negligence of the plaintiffs, the goods of the defendants were injured and damaged in the sum of two hundred and fifty dollars. The prayer of the cross-complaint is, accordingly, for a judgment against the plaintiffs in the sum of three hundred dollars and costs.

The plaintiffs answered the cross-complaint specifically controverting the material averments thereof.

The cause was tried by a jury and a verdict returned in favor of the plaintiffs in the amount for which they sued.

This appeal is by the defendants from the judgment and the order denying them a new trial.

The court refused to permit the defendants to explain by parol proof the meaning of the language of the lease, "ready for occupancy," and it is now claimed that the action of the court in that respect was erroneous and prejudiced the rights of the defendants in the trial of the cause.

It is also claimed that the court committed error seriously militating against the rights of the defendants in disposing of certain instructions which were proposed by the parties. We are convinced that this last-mentioned complaint is well founded and that the cause must be reversed for that reason. Thus we could dispose of this appeal, but, since the cause must be tried *de novo,* it is conceived to be only just to the parties and the trial court that we should express our views upon the other legal points presented here.

The theory upon which the trial court proceeded in its rulings excluding parol testimony which was offered and designed to explain what the defendants contended was the true meaning and scope of the words in the lease, "ready for occupancy," was two-fold, viz.: 1. That the effect of such testimony would be to vary the terms of the writing; 2. That the defendants, having entered into the actual possession of the premises before they were completed in all particulars, waived any breach of the lease by the plaintiffs in those respects.

It is very manifest that the words "ready for occupancy," which are used in the lease as descriptive of the condition in which it was intended and understood that the premises should be placed before the lessees were required to accept or take possession thereof, are general, vague, and indefinite as to their exact meaning and scope, and that, to secure a full explanation of the precise meaning they were intended to bear, it was requisite to examine testimony extrinsic to the instrument itself. One of the contentions of the defendants is that the plaintiffs agreed, upon executing the lease, to construct a cement sidewalk in the front of the premises. Such a sidewalk, it is claimed, was requisite in order to render the premises suitable to the carrying on therein of the business for the purposes of which the defendants leased the premises. The obligation on the plaintiffs to build such a sidewalk does not appear upon or from the face of the lease itself, but, in view of the character of the business for which the defendants intended to use the premises, a cement sidewalk or a substantial sidewalk of some sort may, with singular and cogent reason, be supposed to have been contemplated by the language, "ready for occupancy." Indeed, to fully comply with the covenant expressed by these words, the plaintiffs might have been required to do a number of acts which are not in terms

expressed in the lease. From the words themselves no one can
tell how far the lessors agreed to go in fitting up the prem-
ises or within what limits they thus intended to restrict them-
selves in that regard. The words referred to might have con-
templated the imposition of the obligation upon the plaintiffs
to place the shelving in the store. If this were true, no doubt
would be ventured or fostered that such agreement might rea-
sonably be contemplated by those words, nor would it be
questioned that it would be competent, under the circum-
stances, to disclose such agreement by parol testimony. And
manifestly this can be no less true where the parties may have
had an understanding, not specifically expressed in the writ-
ing, for the building of a sidewalk or for the performance by
the plaintiffs of any other act which they determined or agreed
was essential to the placing of the premises in a condition
suitable to the purpose to which the defendants desired and
intended to put them. The rule is well settled that, ''where
the writing does not show upon its face that it was intended
to express the whole agreement between the parties, parol
evidence is admissible to show other conditions or latent am-
biguities.'' (*Williams* v. *Ashurst etc. Oil Co.,* 144 Cal. 619,
624, [78 Pac. 28, 30]; *Kreuzberger* v. *Wingfield,* 96 Cal. 255,
[31 Pac. 109]; *Sivers* v. *Sivers,* 97 Cal. 521, [32 Pac. 571];
*Balfour* v. *Fresno Canal etc. Co.,* 109 Cal. 221, [41 Pac. 876].)
The effect of the proper application of the rule as thus stated
is never to vary the vital terms of a written agreement or to
enlarge or restrict its scope in derogation of the real intention
of the parties. To the contrary, it respects the plain and
unambiguous terms of a writing and the clearly manifested
intention and purpose of the parties, and justly interposes
only where, as here, the written instrument is couched in such
general and uncertain language as to make its meaning doubt-
ful or as to indicate that the parties have permitted, so far
as the writing itself is concerned, some of the important terms
of their agreement to remain dormant or undisclosed. This
is clearly and peculiarly a proper case for the application of
the rule in question. Thus and thus alone may it be ascer-
tained and determined whether, under the general language
of the lease, ''ready for occupancy,'' the construction of a
cement or any sidewalk in the front of the demised premises
was among the obligations to which the plaintiffs bound them-

selves and which they were compelled to discharge before the defendants were required to enter into the possession and occupancy of said premises under the lease. The rulings of the court in the respect referred to were erroneous and prejudicial.

The second ground of objection to the propriety of parol testimony in explanation of the meaning of the words "ready for occupancy," is, as seen, that the defendants, having entered upon the occupancy of the premises before they were completed or "ready for occupancy," and thereafter paid several months' rent, thereby waived any breach of the lease in that regard by the plaintiffs. We think that this position must be sustained insofar as is concerned the period of time during which the defendants actually occupied and used the premises, and that the latter cannot, therefore, claim legal immunity from the payment of rent for the months covering that period and for which months the rent remains unpaid. But as to the portion of the amount sued for on account of rent alleged to be due for the several months subsequent to the date on which the defendants abandoned the premises, a different situation is presented. One of the special defenses interposed by the defendants is, as we have seen, that they entered into the occupancy and use of the premises when they were yet in an uncompleted condition under a promise by the lessors that they would immediately thereafter complete and finish and put the same in a condition suitable for the carrying on of the business the defendants intended to conduct therein; that the lessors failed, within a reasonable time thereafter, to so complete the premises, and that, furthermore, as by their lease they covenanted to do, the plaintiffs failed to furnish the premises with adequate light and heat; that, for all the foregoing reasons, the defendants were forced to leave and give up the premises on the seventeenth day of January, 1911.

Upon the questions as to the amount of light and of heat with which the premises were provided by the plaintiffs, there is a distinct conflict in the evidence, and with the implied finding of the jury in favor of the plaintiffs with respect to those matters we are not, of course, at liberty to interfere. But it was in effect admitted by the plaintiff, A. L. Morse, that when the defendants entered into the possession of and pro-

ceeded to occupy and use the premises they were yet not fully completed; he admitted that a sidewalk in the front of the premises had not been built at that time, and not until a date long subsequent to the time that the defendants abandoned the premises; that an uncompleted "column," made of rough boards (and unsightly in appearance, according to the defendants) stood, and until after the defendants left the premises, remained in an upright position a little to the right of the front entrance to the store; he in effect admitted that, during the rainy season, the earth walk in front of and leading into the store became "muddy and slushy," and that but for an improvised walk, made of gravel and loose boards laid thereon by the defendants themselves, entrance into and departure from the store would have been effected with much inconvenience and great discomfort; he admitted that he promised the defendants that, if the latter would move their goods into the store and so take possession thereof, he would, within a reasonable time thereafter, complete the premises, and there is testimony in the record that among the things which the plaintiffs were to do to put the room in such condition that it would be "ready for occupancy" within the contemplation of that language of the lease, was the construction of a cement sidewalk.

Undeniably, the defendants, before accepting possession, could have required, as they were under the terms of the agreement entitled to have, the premises put in the condition in which the plaintiffs agreed to prepare them for the purposes of the business of the defendants, and, while, as we have held, the taking of possession before the premises were so prepared constituted or involved a waiver by the lessees of any breach of the lease in that regard by the plaintiffs, such waiver ceased to operate or to remain binding upon the defendants after they abandoned the premises, if it be true, as they contend, that the lessors failed to carry out their promise to finish and complete the premises according to the original agreement immediately or within a reasonable time after the defendants took possession. In other words, while the waiver would continue to operate and the defendants, therefore, remain under obligation to pay the rent for the period during which they maintained occupation of the premises, it ceased to operate the moment that the defendants abandoned

the premises because of the fact that they were not put in the condition required by the lease, assuming, of course, that the defendants took possession before the premises were ready for occupancy upon an understanding or under a promise by the lessors that, after possession was so taken, the latter would finish the premises or put them in the required condition, and that they failed to keep that promise.

The foregoing views merely involve the application of the well-established rule that "when the lessor is guilty of acts that preclude the tenant from the beneficial enjoyment of the premises, in consequence of which he abandons possession, such acts amount to an eviction." (24 Cyc. 1131, and cases cited.) Or, as the rule, so far as the present case is concerned, is more concretely stated elsewhere: "The neglect of the landlord to keep the premises in a condition suitable to the purpose for which it was rented, may be treated as an eviction by the tenant and he may refuse to pay rent." (*Alger* v. *Kennedy*, 49 Vt. 109, [24 Am. Rep. 117; *De Witt* v. *Pierson*, 112 Mass. 8, [17 Am. Rep. 58]; *Pridgeon* v. *Excelsior Boat Club*, 66 Mich. 326, [33 N. W. 502]; *Skally* v. *Shute*, 132 Mass. 367; *Germania Fire Ins. Co.* v. *Myers*, 8 N. Y. St. Rep. 349; *Duff* v. *Hart*, 16 N. Y. Supp. 163.) And, if it be true that the lessors, among the other engagements involved in the covenant to put the premises in a condition to be "ready for occupancy," agreed to lay a cement sidewalk in front of the premises, and, having failed to do so before the tenants took possession, promised the latter that they would build such walk within a reasonable time after they entered into possession, and neglected to so lay the walk, the defendants were justified, under the rule above stated, in abandoning the premises and refusing to pay further rent.

The instruction above adverted to and the giving of which would require a reversal of the case regardless of whether or not there were other prejudicial errors pointed out in the record, reads as follows: "I instruct you, gentlemen of the jury, that the lease in this case was for the occupation of a room in a building heated by steam, and under the terms of the lease the defendants were entitled, without additional charge or expense, to have such room supplied with heat from the heating plant on the premises, and it was the duty of the landlord, the plaintiff in this case, to use reasonable care and

keep such steam-heating plant in good repair, and to furnish the defendants' room, so leased, such heat as the plant would furnish to it, when used and worked with ordinary care.''

The lease reads: ''The said parties of the first part do, by these presents, demise and lease unto the said parties of the second part, the south store room (ground floor) of the Palace Hotel (now nearing completion) on the east side of Main Street, in Alturas, California, with appurtenances, including water, light and heat,'' etc.

Counsel for the respondents contend that, under the correct view of the foregoing language of the lease, the plaintiffs were obliged to furnish the defendants with such an amount of heat only as was ''appurtenant'' to the building of which the demised premises constituted a part, or, in other words, such a degree of heat only as the heating plant installed in the hotel building was capable of supplying.   We cannot assent to that construction of the lease in that particular.   To the contrary, that the plaintiffs agreed to provide the room leased to the defendants with such a degree of heat during the prevalence of cold or inclement weather as would uniformly produce, within the interior of the premises, an artificial temperature sufficient to counteract the effect of the cold weather or as would superinduce ordinary or reasonable warmth and physical comfort, is the only rational and just construction of the provision of the lease in that regard.   It may be and perhaps is true that all the parties believed, at the time of the execution of the lease, that the heating plant designed to supply heat for the entire building would be sufficient at all times to perform that function; but this consideration, assuming it to be well founded, can furnish no support for the proposition that, in case the plant proved incapable, for some fault in its mechanism or installation, of supplying the necessary degree of heat, the plaintiffs were required to go no further in the discharge of their obligation to furnish the demised premises with heat.

Now, as before stated, the testimony is distinctly conflicting upon the question whether the heat furnished the defendants by the plaintiffs was sufficient to produce the necessary warmth in the store to render the premises comfortable to the employees and customers during cold weather.   One of the defendants testified that the heat from the heating plant of the

plaintiffs was at all times in cold weather so inadequate as to necessitate the wearing of overcoats in the store by themselves and the employees. The plaintiffs testified that two heat radiators were installed in the leased store room; that they offered to put in three radiators, but that the defendants objected to the installation of more than two upon the ground that the third, if put in, would take up more space than they could spare without interference with the shelving; that the room was heated from the plant installed for the purpose of providing the entire hotel building with heat, and that the room leased to the defendants was uniformly furnished with the same amount or degree of heat from that source as was likewise furnished to other rooms in the hotel. The testimony of other witnesses, guests of the hotel, tended to show that the heat supplied to the sleeping and other rooms in the building was sufficient at all times to so neutralize the effect of the cold as to render such rooms and apartments uniformly comfortable in that particular. With the testimony upon that issue thus sharply conflicting, it was obviously a matter peculiarly within the exclusive province of the jury to pass upon and consider for themselves every fact essential to a final solution of the vital proposition involved in said issue, viz.: whether the plaintiffs did or did not fail to furnish the defendants with the amount of heat contemplated by their agreement in that respect as disclosed by the lease.

Under our construction of the lease as heretofore indicated, if the plaintiffs, for *any* reason which it was in their power to control, failed to perform their obligation to furnish the defendants with a proper amount of heat, such failure obviously constituted a breach of their covenant in that respect for which the defendants were, under the rule hitherto stated, justified in abandoning the premises and withholding the payment of the rent reserved. Whether such failure might have been due to the want of capacity in the heating plant to produce the requisite amount of heat or to some other cause, is wholly immaterial. In other words, the inquiry as to that issue was at an end the moment it was shown that the required heat was not supplied by the plaintiffs.

Readily, therefore, the vice of the above quoted instruction becomes apparent from its obvious assumption of the existence of a vital fact and, moreover, because of its erroneous construc-

tion of the covenant of the lease relative to the furnishing of heat, viz.: 1. That the heating plant from which the plaintiffs were to supply the defendants with heat was sufficient in all respects to produce an adequate amount thereof for the purposes of the defendants; 2. That the limit of the obligation of the plaintiffs to provide the demised premises with heat was reached when they were furnished with such an amount of heat only as the heating plant installed in the hotel was capable of supplying, whatever that might be. The first of these propositions was for the jury and its removal from their consideration, which was the effect of the instruction, was erroneous and prejudicial to the rights of the defendants. The second was, as stated, the result of a misconceived notion of the court as to the extent of the obligation of the plaintiffs, under the lease, with respect to the degree of heat to be supplied, and harmonizes with the erroneous theory of the plaintiffs that the lease required of them to supply such an amount of heat only as is "*appurtenant* to the leased premises." As before stated, this cannot in reason be held to represent a correct construction of the lease as to the covenant to supply heat.

For the errors herein pointed out, the judgment and the order are reversed.

Chipman, P. J., and Burnett, J., concurred.