[Civ. No. 5876. Third Appellate District.—January 14, 1938.]

CLARENCE E. WOOLFORD, Respondent, v. ELECTRIC APPLIANCES, INC. (a Corporation) et al., Defendants; BYRON B. DAVIS et al., Appellants.

Mento & Read, Charles A. Christin and T. J. Keegan for Appellants.

Clifford A. Russell and Rose M. Sheehan for Respondent.

PLUMMER, J.—The plaintiff had judgment against the appellants for the sum of $788.26, on account of the alleged failure of said appellants to furnish an efficient refrigeration plant. This appeal is prosecuted from said judgment.

The record shows that on or about the 22d day of June, 1934, the appellants, Byron B. Davis and Earl P. Davis, and the respondent, Clarence E. Woolford, entered into an agreement of lease of property in the city of Sacramento, wherein the appellants leased to respondent a certain portion of a structure to be erected. The structure was more specifically described as a ''Drop-In'' market. This market contained a great may stalls. The lease to the respondents was for a stall to be located in said market. The lease in question was for a specific purpose and contained provisions as to certain appliances to be installed by the lessors. Outside of the formal provisions of the lease there are two specifications involved in this proceeding, to wit: Paragraph No. 11 of the lease reads: ''The herein demised premises shall be used for some or all of the following purposes: operation of meat market, to have the exclusive sale of all fresh meats, cured meats, smoked meats, fish and poultry, except sliced ham and bacon. Also, to have the privilege of selling all luncheon meats, bulk and package shortening and lard, bulk sauerkraut, cottage cheese and sandwiches. Said prem-

ises shall not be used for any other purpose without the written consent of the owner." Paragraph 21 of the lease is in these words: "The following described fixtures and appurtenances are to be installed by the owner: Refrigeration display counters, display racks and shelving, back bar, one 'walk-in' ice-box, refrigeration machinery, rails in box, one sink, gas outlet, hot water heater."

The court found that the refrigeration plant agreed to be installed by the lessors was inefficient for the purposes contemplated by the lease; that as a result of the inefficiency of the refrigeration plant that a considerable portion of the meats attempted to be handled by the respondent, spoiled, to the extent of the value of $688 and some cents; that the respondent was also put to the additional expense of $100, aggregating a total loss by the respondent of $788.26.

The appellants in this cause rely upon the general principle stated in 36 Corpus Juris, page 45, as follows: "There is, as a general rule, no implied covenant upon the part of the landlord that the demised premises are fit for the purposes for which they are rented, or for the particular use for which they are intended by the tenant, or that they shall continue fit for the purposes for which they were demised, and this is true although the landlord knows the purpose for which the tenant intends to use the premises."

The trial court properly held that this rule was inapplicable to the situation presented both by the lease and the testimony introduced at the trial. For the purpose of determining the intent of the parties the court also very properly held that the entire lease should be considered, that is, that the kind of refrigeration plant agreed to be installed by the lessors should be measured by the purposes for which the lease was executed, the lease specifying the particular products to be handled by the lessee, and also, further limiting the handling of products by the lessee, save and except by the further written consent of the lessors. The efficiency of the plant necessarily depended upon its operation of sufficient capacity to preserve, fit for consumption, the products which the lease specified should be kept and offered for sale to the public by the lessee. The fixtures and appliances mentioned in the lease were not installed in the building at the time of the execution thereof. No opportunity was afforded to the lessee to inspect the same prior to the execution of the lease.

Thus, the rule of *caveat emptor* as applied to structures already in existence had and has no application to the questions here presented. All the cases cited by the appellants, based upon that rule, constitute no authority or reason for reversing the judgment of the trial court, and hence, those cases need not be here analyzed or further considered.

A somewhat similar question was presented to this court in the case of *Morse* v. *Tochterman*, 21 Cal. App. 726 [132 Pac. 1055], where the lease provided for the furnishing of heat, etc. Counsel for the lessors contended that as no degree of heat was specified, just as in this case no degree of refrigeration was specified, the lessors were only obligated to furnish such heat as the installed plant supplied. To this contention the court, speaking through Mr. Justice Hart, replied as follows: "Counsel for the respondents contend that, under the correct view of the foregoing language of the lease, the plaintiffs were obligated to furnish the defendants with such an amount of heat only as was 'appurtenant' to the building of which the demised premises constituted a part, or, in other words, such a degree of heat only as the heating plant installed in the hotel building was capable of supplying: We cannot assent to that construction of the lease in that particular. To the contrary, that the plaintiffs agreed to provide the room leased to the defendants with such a degree of heat during the prevalence of cold or inclement weather as would uniformly produce, within the interior of the premises, an artificial temperature sufficient to counteract the effect of the cold weather or as would superinduce ordinary or reasonable warmth and physical comfort, is the only rational and just construction of the provision of the lease in that regard. It may be, and perhaps is true, that all the parties believed, at the time of the execution of the lease, that the heating plant designed to supply heat for the entire building would be sufficient at all times to perform that function; but this consideration, assuming it to be well founded, can furnish no support for the proposition that, in case the plant proved incapable, for some fault in its mechanism or installation, of supplying the necessary degree of heat, the plaintiffs were required to go no further in the discharge of their obligation to furnish the demised premises with heat."

The appellants in the instant case understood and knew the purposes for which the refrigeration plant was to be installed, and there necessarily followed the implied warranty or understanding that the plant to be installed would be reasonably adequate for preserving fit for market the products mentioned in the lease to be kept and sold by the lessee.

In the case of *Hunter* v. *Porter*, 10 Idaho, 72 [77 Pac. 434], a like question was there presented for consideration, and while the case was reversed for a different reason, the court in its opinion, relative to the question which we have under consideration, used the following language: ''It is clear to us, from an examination of the instrument itself, that the lessor knew and understood the purpose for which the lessee was securing the premises; and, not only that, but by the terms of his lease he restricted and confined the lessee to the use of the premises for those purposes only. At the time this agreement of lease was entered into, the building was not completed, and was therefore not in a condition that the tenant could enter and examine the same to ascertain whether it met all the requirements for which he was leasing it. On the other hand, the landlord, by the implied terms of the lease, represented the building as a 'cold storage building', and that term must be understood to have a meaning peculiar to a class or kind of building designed for the preservation and safe-keeping of such articles and products as it was understood that the tenant meant to keep in the building.'' After citing a large number of authorities the court further said: ''This was more than a location and designation of the property, and amounted to a representation of its character.''

In the case of *McCready* v. *Bullis*, 59 Cal. App. 286 [210 Pac. 638], where the lease provided for the sinking of a well of a certain size, it was construed as requiring the lessor to sink a well from which the lessee might obtain a quantity of water adequate to properly irrigate the leased lands. In that case, lands which were unproductive without irrigation, were leased, and the lease provided for the sinking of an artesian well of at least 12 inches in diameter, for the purpose of obtaining water for the irrigation of the lands. It was held, as we have stated, that it was contemplated that the lessor should furnish sufficient water for the irrigation of the leased lands. It was further held in that

case that the parties to the lease knew and understood that without water in sufficient quantity to irrigate the leased lands, the leased lands would be valueless. That rule applied to the instant case justifies the holding that the lessors and the lessees knew that unless a reasonably adequate refrigeration plant was installed, it would be utterly valueless for the uses contemplated. All parties necessarily understood that the degree of refrigeration should be sufficient to preserve the products mentioned in the lease to be handled by the lessee, and that if sufficient refrigeration was not supplied, the refrigeration plant would be valueless.

In the case of *Whitney* v. *Aronson,* 21 Cal. App. 9 [130 Pac. 700], where the question of furnishing heat was before the court, based upon a lease specifying the furnishing of heat for certain premises, it was held that the lease contemplated the furnishing of heat so as to render the leased premises reasonably comfortable during the winter months.

Again, in the case of *Hot-N-Kold Corp.* v. *Todd,* 105 Cal. App. 718 [288 Pac. 687], it was held in substance that it was common knowledge that a refrigerator is manufactured and intended for the keeping of food products in a wholesome condition and to prevent from spoiling. In that case a refrigeration plant was to be installed, which proved inefficient, just as in the case which we are considering, and it was held that the lessors had not supplied an efficient plant.

In the case of *Hardman Estate* v. *McNair,* 61 Wash. 74 [111 Pac. 1059], the lease provided for the installing, or rather, arranging of the leased premises for a cafe and kitchen, the lessees not to use such premises for other than a cafe and kitchen. It was held that there was a warranty on the part of the lessors to make the premises reasonably suitable and fit for a cafe and a kitchen. We may here state that the cases cited by the appellant relative to property in existence, whether real or personal, have no application, for the simple reason that the lessee has an opportunity to inspect the same prior to the execution of the lease.

In the case of *Bentley* v. *Taylor,* 39 N. W. 267, Id.; 81 Iowa, 306 [47 N. W. 58], the court in its opinion quotes from Wood's Landlord and Tenant as follows: ''Where a landlord lets premises for a certain purpose, and covenants and agrees that the building shall be ready for occupancy at a certain time, there is an implied covenant that the building shall be

fit for occupancy for the purposes for which it was let at the time named.'' This, of course, enforces the rule followed by the trial court that there is a distinct difference between property in existence at the time of the execution of the lease, which the lessee has an opportunity to inspect and use his own judgment as to its fitness or adequacy for the purposes intended, and property or appliances which are either to be built or installed subsequent to the execution of the lease, and which the lessee of course has no opportunity to inspect. In the latter case the rule followed by the trial court was properly applied, to wit: That the property to be installed would be reasonably adequate for the purposes intended.

Other cases might be cited, but what we have said we think sufficient to show that the trial court was correct in reading the lease as a whole, and coming to the conclusion that there was an implied contract on the part of the lessors that the refrigeration plant to be installed by them should be sufficiently or reasonably efficient for the purposes intended. That this was not done does not appear to be seriously questioned.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.