Filed 5/12/22  Jin and Yu v. Pup Pup Hooray CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JIN AND YU LLC, | |
| Plaintiff and Respondent, | G060273 |
| v. | (Super. Ct. No. 30-2020-01136849) |
| PUP PUP HOORAY LLC, et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Carmen R. Luege, Judge.  Affirmed.

Peterson Law, Christopher L. Peterson and Michael M. Baker for Defendants and Appellants.

Law Offices of Michael C. Earle and Michael C. Earle for Plaintiff and Respondent.

**INTRODUCTION**

This is an appeal from a judgment for the landlord, Jin and Yu, LLC, in an unlawful detainer action. Appellant and tenant Pup Pup Hooray, LLC, objects to the trial court's decision on 14 grounds, many of which are related to compliance with the statutory procedure mandated for instituting an unlawful detainer lawsuit.[1] The other grounds dispute the amount of the award in back rent and holdover damages.

Some of Pup Pup's objections are making their first appearance in this court, and there is the unavoidable impression of things being thrown against the wall in the hope that something will stick. As an appellate strategy, this does not recommend itself.

The rule governing the issues in this case is a simple one: A commercial tenant cannot remain in possession and not pay rent. Whatever other disputes a tenant has with the landlord, if you stay, you pay.

The trial court found that Pup Pup had stayed without paying. It granted Jin judgment for back rent and holdover damages. It also granted Jin a writ of possession; when judgment was entered, Pup Pup was still in the building.

We affirm the judgment. The court had substantial evidence of unpaid back rent. It also found that Jin had fulfilled the requirements of the unlawful detainer statutes regarding notice. These were the only two issues before the trial court in an unlawful detainer proceeding, and they are the only ones we can review.

**FACTS**[2]

Pup Pup leased a building in Lake Forest from Jin to operate a dog day care center and boarding facility. The lease was signed on November 5, 2018, and the term was 10 years, commencing January 1, 2019. The lease obligated the tenant to pay base

---

[1] The unlawful detainer complaint named Pup Pup's owners, Lannette Atiyeh and Andy Atiyeh, as defendants as well. For convenience, we refer to all three defendants as Pup Pup.

[2] As we are required to do, we adopt the facts most favorable to the judgment. (*See Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1474, fn. 1.)

rent and HOA fees monthly.  It defined "rent" as all tenant's monetary obligations except for the security deposit.  The base rent increased yearly on January 1.

On February 26, 2020, Jin served a three-day notice to pay rent or quit on Pup Pup.  The amount of unpaid rent for the preceding year was specified in the notice as $49,143.60.  The notice was served by posting and mailing at the business address in Lake Forest, with an additional mailing to another address in Foothill Ranch.  Service was made by a registered process server.  The unlawful detainer complaint itself was filed on March 6, 2020.  Past due rent was alleged to be $49,140; the fair rental value was alleged to be $444.78 per day.

Pup Pup filed an unsigned amended answer on November 30, 2020.  The amended answer raised Jin's failure to serve form UD-101 along with the summons and complaint.  As affirmative defenses, Pup Pup alleged (1) breach of warranty to provide habitable premises, (2) retaliation, (3) acceptance of rent after notice to quit, and (4) rent due between March 1, 2020, and January 31, 2021, covered by Code of Civil Procedure section 1179.03.  Pup Pup also alleged that the fair rental value alleged in Jin's complaint was excessive.

Trial commenced on December 9, 2020, and concluded on January 20, 2021.  Because of Covid, the trial was held remotely.  The three-day notice to quit, the proof of service of the notice, and a copy of the lease were admitted into evidence.  Jin's payment ledger was also admitted.

Jin's witness, Leslie Bai, testified that the building had been vacant for about three years before Pup Pup signed the lease.  He acknowledged that he had not discussed water leaks in the roof, a non-functioning air conditioning system, non-opening rollup doors, or electrical issues with Pup Pup's owners before the lease was signed.  He also testified that these defects were fixed by May 2019.

Pup Pup's cross-examination of Bai focused almost exclusively on the condition of the building at the time of the lease and Bai's knowledge about the

3

condition. At various times, the court interrupted the examination to ask, for example, "[W]hy is [Pup Pup] still in possession? Why are we here?" "[W]hy didn't [Pup Pup] declare a breach and vacate the property?" and to remind counsel that there is no warranty of habitability in a commercial lease. The remedy for a defective building was to turn over possession and sue for breach of contract.

Pup Pup's witness testified that rent was paid for the first month of the lease, January 1, 2019. Pup Pup's counsel stated that it had received the keys to the property sometime before the lease was signed.

The court issued a minute order in Jin's favor on February 24, 2021, and judgment was entered on May 14, 2021.[3] The court ruled that the three-day notice to pay rent or quit underestimated the amount of rent due as of February 26, 2020. After showing its work, the court ruled that Pup Pup owed $50,584.66 when the three-day notice was served, about $1,500 over the amount specified in the notice.[4] This amount included monthly HOA fees of $1,300 per month and late charges. The court also awarded holdover damages of $77,921.70 for the period between March and December 2020.

The court also ruled that the evidence of the condition of the building upon possession that Pup Pup frequently attempted to introduce was irrelevant in an unlawful detainer action.

## DISCUSSION

Following an unlawful detainer bench trial, we review the court's interpretation of the governing statutes de novo and its factual findings for substantial evidence. (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419,

---

[3] Pup Pup moved for a new trial, delaying the entry of judgment.

[4] The court began its rent calculation at May 1, 2019. The last month in the calculation was February 2020.

1425-1426 (*Palm Property*).)  Evidentiary rulings are reviewed for abuse of discretion. (*Id.* at p. 1426.)

There are several principles of appellate practice that bear repeating here. First, we do not consider factual issues raised for the first time on appeal.  The same rule applies to new theories.  (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.)  Second, the decision of the trial judge is presumed correct, and the appellant has the burden of showing error.[5]  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)  We indulge "all intendments and presumptions . . . in favor of its correctness."  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)  Finally, even if the trial court made an erroneous ruling, we do not reverse a judgment unless the appellant can show prejudice, that is, the likelihood of a more favorable outcome if the error had not been committed. (Code Civ. Proc., § 475.)  Again, the appellant has the burden of showing prejudice. (*Quail Lakes Owners Assn. v. Kozina* (2012) 204 Cal.App.4th 1132, 1137.)

I.        **Procedural Issues**

A.                **Opportunity to Object**

Pup Pup argues that it did not have an opportunity to object to Jin's evidence because of the requirements imposed on hearings by Covid protocols.  The court muted everyone else while Jin's witness, Bai, was testifying.  Pup Pup asserts that the court did not ask its counsel if he objected to the admission of the proof of service before admitting it.[6]  Pup Pup now claims to have an authentication objection to the proof of service.

---

[5]        A corollary of this rule is that the respondent is not charged with refuting appellant's arguments. In fact, the respondent need not file a brief at all.  (See Cal. Rules of Court, rule 8.220(a)(2).)  In that case, we would consider only the opening brief and appellant's oral argument.  The appellant, however, is still obligated to establish error and prejudice.  (See *Conness v. Satram* (2004) 122 Cal.App.4th 197, 200, fn. 3.)

[6]        During the first day of trial, the court stated, "Unless there's an objection, I admit.  So if you have an objection you have to speak up. [¶] . . . [¶]  Okay, you don't have to say no objection, okay?  Only if you have an objection, unmute yourself.  Otherwise, I just let it in, okay?"

Pup Pup's counsel did object to the admission of the proof of service. He did so when Jin's counsel explained to the court that it was relying on the exhibits attached to the complaint, which included the proof of service. The court said, "I don't have a problem with that." Pup Pup's counsel then spoke up, saying "I do have a problem with that, and that is: the complaint was never verified. It's not a verified complaint, so." The court responded that if that was the case, Pup Pup needed to file a motion to strike the complaint and could not "wait until the day of trial and announce, 'Oh, by the way, did I forget to mention that the complaint is defective?'"

The only objection at that point was the lack of verification of the complaint. Pup Pup did not raise an authentication issue at trial, but has brought it up now. As stated above, we do not consider issues raised for the first time on appeal. Nowhere in either the trial transcript nor in Pup Pup's opening and closing trial briefs is there a reference to a refusal to entertain an objection based on failure to authenticate the proof of service.[7]

## B. Service of Three-Day Notice

Pup Pup has two arguments with respect to the proof of service for the three-day notice. First, the proof of service was not properly authenticated. Second, the proof of service had errors that rendered it ineffective. Again, these are issues being raised here for the first time.

Pup Pup acknowledges that Evidence Code section 647 "establishes a presumption, affecting the burden of producing evidence, of the facts stated in the return

---

[7] During Jin's case-in-chief, on the first day of trial, there was some discussion between the court and Jin's counsel regarding assigning exhibit numbers for the lease agreement, the three-day notice, and the proof of service. Pup Pup's counsel did not say a word during this discussion.

[of a registered process server]."[8] It also acknowledges that Evidence Code section 647 applies in unlawful detainer actions. (*Palm Properties, supra,* 194 Cal.App.4th at pp. 1426-1427.) The proof of service was returned by a registered process server, and Pup Pup did not even attempt to produce evidence to support a finding of nonexistence. Evidence Code section 647 placed that burden on Pup Pup. That would seem to take care of authentication.

The second argument is an exercise in nit-picking. The three-day notice is titled "3-Day Notice to Pay Rent *or* Quit" (italics added) and the premises address is identified as "26834 Vista Ter, Lake Forest, CA 92630." The proof of service contained a typographical error: "3 Day Notice To Pay Rent *of* Quit" (italics added) and did not include a hyphen.[9] It stated that the notice was served by "Posting and mailing." The proof of service further recited that the process server posted a copy of the notice in a conspicuous place on the premises and mailed copies of the notice to "26834 Vista Ter, Lake Forest, CA 92630" and also mailed to "30 Galeana, Suite 200 Foothill Ranch Ca 92610."

Pup Pup asserts that the typographical error removes the proof of service from the ambit of Evidence Code section 647 because the title of the three-day notice and the name of the document referred to in the proof of service are not the same. In addition, the proof of service does not state on whose behalf the document was served. And Pup Pup professes to be confused about where the document was mailed. Was it posted on the premises in Lake Forest but mailed to the address in Foothill Ranch? Of course, none of these issues was raised at trial.

---

[8] Evidence Code section 604 provides, "The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption. Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate."

[9] Pup Pup characterizes the proof of service as referring to "a document by a slightly different name."

The notion that the typographical error renders the proof of service ineffective as evidence does not merit discussion. Pup Pup has also provided no authority for the idea that a proof of service must name the party on whose behalf the notice is served. And we disagree entirely that the notice is ambiguous about posting and mailing. The notice clearly states that the notice was posted on the premises. It also clearly states that the notice was mailed to two addresses, one in Lake Forest (the premises) and the other in Foothill Ranch. There is no confusion.

In any event, we would not entertain these issues on appeal, as they were not raised below. We mention them primarily to express our disappointment that such arguments were made by a member of the bar.

### C.        Reasonable Estimate of Amount Due

Code of Civil Procedure section 1161, subdivision (2), requires the three-day notice to pay or quit to include "the amount that is due." Code of Civil Procedure section 1161.1, subdivision (a), provides, in pertinent part, "If the amount stated in the notice provided to the tenant pursuant to subdivision (2) of Section 1161 is clearly identified by the notice as an estimate and the amount claimed is not in fact correct, but it is determined upon the trial or other judicial determination that rent was owing, and the amount claimed in the notice was reasonably estimated, the tenant shall be subject to judgment for possession and the actual amount of rent and other sums found to be due." Code of Civil Procedure section 1161.1, subdivision (e), provides a 20 percent leeway, more or less, in estimating the amount of rent due. In this case, the amount of the estimate was approximately $1,500 less than the amount awarded by the court – well within the 20 percent allowance – and it was *in the tenant's favor*.

Pup Pup argues that the estimate was off by more than 20 percent, rendering the three-day notice ineffective, and that the trial court did not consider this defense. The basis for this argument turns out to be the poor condition of the building at the time Pup Pup entered into possession. We discuss this argument below, as part of the

8

discussion of the amount of the award.  We note here, however, that the case Pup Pup

cited to support its argument, *Woolford v. Electric Appliances, Inc.* (1938) 24 Cal.App.2d

385 (*Woolford*), does not do so.

Woolford involved a tenant suing a landlord because it had not performed a

covenant in the lease to install a refrigerator.  (*Woolford, supra,* 24 Cal.App.2d at p. 386.)

The reviewing court even quoted the general rule regarding the duty of the landlord to

provide premises fit for the tenant's purpose,[10] but the general rule did not apply because

the landlord had specifically covenanted to supply the refrigerator.  It is also noteworthy

that *Woolford* is not an unlawful detainer case, but rather a straight tenant-vs.-landlord

breach of contract action for damages, of the kind to which the trial court in this matter

repeatedly referred.

### D.        Cover Sheet

Pup Pup argues, in effect, that was reversible error to enter judgment for Jin

in the absence of the service of form UD-101 along with the complaint.[11]  Breaking with

its practice, Pup Pup *did*, in fact, raise this issue in the trial court.  As the court explained

in its ruling on Pup Pup's motion for new trial, form cover sheet UD-101 "is designed to

raise issues that relate to the application of the Tenant COVID 19 Relief Act of 2020.

This Act does not apply to unlawful detainers for possession of commercial units."

The second item on the form supports the trial court's assessment.  Item

one asks for the names of the plaintiff and defendant.  The second item consists of boxes

to check for either "residential" or "commercial" real property as being the subject of the

unlawful detainer and provides, "If only 'commercial' is checked, no further items need

to be completed except signature and verification."  So if Jin had served this form along

---

[10]        "'There is, as a general rule, no implied covenant upon the part of the landlord that the demised premises are fit for the purposes for which they are rented, or for the particular use for which they are intended by the tenant, or that they shall continue fit for the purposes for which they were demised, and this is true although the landlord knows the purpose for which the tenant intends to use the premises.'" (*Woolford, supra,* 24 Cal.App.2d at p. 387, quoting 36 C.J.S., p. 45.)

[11]        Jin eventually filed the form, on January 14, 2021.

9

with the complaint, Pup Pup would have learned the names of the parties and the fact that commercial property was involved in the action.

Pup Pup has also not addressed how the failure to serve this form prejudiced it. The complaint itself provided this information, and Pup Pup does not explain how the outcome of the unlawful detainer action would have changed for the better if this information had been served separately from the complaint.

## II.          Amount of Award

### A.          Late Fees

Paragraph 13.4 of the lease permitted Jin to charge a late fee equal to 10 percent of the overdue amount or $100, whichever is greater. Civil Code section 1671, subdivision (b), provides, "Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."[12] Statutory policy favors the validity of these provisions except in certain consumer transactions and casts the burden on the opposing party to prove unreasonableness. (*Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 656.)

Pup Pup presented no evidence at trial that the late fees were unreasonable under the circumstances. In fact, it presented no evidence disputing the percentage rate of the late fees at all, so it did not carry its burden to invalidate the provision.

Pup Pup argues on appeal that Jin presented no evidence of late fees, citing to portions of the trial transcript in which Jin's witness, Bai, said that he thought the difference between the amount in arrears shown in his ledger (which included only base rent and HOA fees) and the amount in the three-day notice arose from the addition of late fees to the total unpaid amount. Pup Pup characterizes this testimony and excerpts from

---

[12]          Civil Code section 1671, subdivision (c), refers to liquidated damages provisions in personal, family or household purpose or residential leases.

10

Jin's opposition to Pup Pup's motion for nonsuit as stating that late fees were *not* imposed and that lack of a late-fee entry in the ledger meant they had not been included in the three-day notice. Pup Pup adds that Jin is judicially estopped from changing its position regarding the imposition of late fees.

This argument grossly misrepresents the record. The document to which Pup Pup cites states that late fees were not assessed as part of the running total of rent and HOA fees in the ledger that Jin was compiling over the months of the tenancy. The fees were not tacked on to the total amount of unpaid rent until Jin made its calculations for the three-day notice and the unlawful detainer complaint. Jin never represented that it was foregoing the collection of late fees as part of the unlawful detainer action. Moreover, during the second day of trial, Bai testified unequivocally that the difference between the amount in the ledger and the amount in the three-day notice was attributable to late fees.

Bai testified the amount of late fees made up the difference between the amount owing as computed in the ledger, exhibit 3, which recorded only base rent and HOA fees, and the amount in the three-day notice. The court found he had correctly calculated the late fees to total $10,742.98. Bai's testimony regarding the computation of the late fees supplies the evidence for the court's calculation.

### B. Rent Abatement

Pup Pup argues the rent was abated during any period of delayed possession, and, further, that possession did not start until all the "improvements were in

11

the proper, agreed-upon condition," citing to paragraph 3.3 of the lease.[13] Pup Pup further argues paragraph 9.6 of the lease provides for rent abatement for any period of time during which "partial damage" impairs its use of the premises. It says it could not operate its business without a certificate of occupancy, which it could not obtain until further improvements were made. Therefore rent was abated during that entire time. Thus not only was the amount of the award for back rent wrong, but also the amount of rent specified in the three-day notice was not a reasonable estimate.

The court computed the amount of rent due from May 2019 through February 2020, after agreeing that rent was abated in March and April 2019, pursuant to the lease. Indulging the presumptions and intendments of this finding, as we are required to do in the absence of a statement of decision (see *In re Marriage of Arceneaux, supra,* 51 Cal.3d at pp. 1133-1134), we conclude the court found Pup Pup went into possession no later than January 2019.

Pup Pup's first argument makes "use" the equivalent of "possession." Pup Pup went into possession at least as of January 2019.[14] If its counsel's judicial admission is accepted, it obtained possession (the keys to the building) before the lease agreement was signed in November 2018. The date of the certificate of occupancy from the City of Lake Forest – allowing "use" of the premises – does not determine possession.

---

[13] Paragraph 3.3 provides, "Delay In Possession. Lessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises to Lessee by the Commencement Date. If, despite said efforts, Lessor is unable to deliver possession by such date, Lessor shall not be subject to any liability therefor; nor shall such failure affect the validity of this Lease or change the Expiration Date. Lessee shall not however, be obligated to pay Rent or perform its other obligations until Lessor delivers possession of the Premises and any period of rent abatement that Lessee would otherwise have enjoyed shall run from the date of delivery of possession and continue for a period equal to what Lessee would otherwise have enjoyed under the terms hereof but minus any days of delay caused by the acts or omissions of Lessee. If possession is not delivered within 60 days after the Commencement Date, as the same may be extended under the terms of any Work Letter executed by Parties, Lessee may, at its option, by notice in writing within 10 days after the end of such 60 day period, cancel this Lease, in which event the Parties shall be discharged from all obligations hereunder. If such written notice is not received by Lessor within said 10 day period, Lessee's right to cancel shall terminate. If possession of the Premises is not delivered within 120 days after the Commencement Date, this Lease shall terminate unless other agreements are reached between Lessor and Lessee, in writing."

[14] In its opening trial brief, Pup Pup represented to the court that it had hired an architect to start the improvements in December 2018.

12

In the context of a commercial lease, the general rule that a tenant must pay rent once it occupies the premises, regardless of their condition. (*Samuels v. Ottinger* (1915) 169 Cal. 209, 211 [obligation to pay rent arises from occupancy]; *Reynolds v. McEwen* (1952) 111 Cal.App.2d 540, 543-544; *Davis v. Stewart* (1944) 67 Cal.App.2d 415, 418; *Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd.* (1989) 215 Cal.App.3d 490, 495.) Although a tenant may have claims against a landlord for failing to provide the premises in a condition that allows the tenant to conduct its business, these claims do not relieve the tenant from paying rent or from defending against a claim for unlawful detainer based on failure to pay rent. (*Arnold v. Krigbaum* (1915) 169 Cal. 143, 145-146; *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 46 [when landlord impairs tenant's use of the premises, tenant may seek damages, but must continue to pay rent while in possession]; *Schulman v. Vera* (1980) 108 Cal.App.3d 552, 558 [breach of landlord's covenant to repair is not a defense unlawful detainer for tenant's failure to pay rent]; *Petroleum Collections Inc. v. Swords* (1975) 48 Cal.App.3d 841, 846-847 [covenant to pay rent independent of landlord's obligations other than delivering possession].)

In this case, the trial court repeatedly referred to the rule that while Pup Pup could sue for breach of the lease if the premises were not in proper condition, it could not remain in possession without paying rent. Pup Pup, however, continued to try to introduce evidence of all the improvements that were not working to abate the rent. The trial court, in turn, cut off cross-examination when it strayed into the subject of the poor condition of the building, on the grounds that the condition of the building was a separate issue from whether Pup Pup was behind on the rent.

Substantial evidence supported the trial court's conclusion that Pup Pup was in possession at least as of March 2019 and probably earlier. Paragraph 3.3 refers to delay in *possession*, not delay of use. There was no evidence that Pup Pup's possession of the premises was delayed past the time it was assessed for rent. In fact, the evidence

13

suggested that Pup Pup was in possession well before March 2019 and making tenant improvements at that time.

Pup Pup also argues that it did not have to pay rent because paragraph 9.6 excused it from paying rent while the premises was "damage[d]." This is another new theory.

Paragraph 9.1 of the lease, the section regarding damage or destruction, defines "Premises Partial Damage" as "damage or destruction to the improvements on the Premises . . . which can be reasonably repaired in 6 months or less from the dates of the damage or destruction. Lessor shall notify Lessee in writing within 30 days from the date of the damage or destruction as to whether or not the damages is Partial or Total." The lease defines "Premises Total Destruction" as "damage or destruction of the Premises . . . which cannot reasonably be repaired in 6 months or less from the date of the damage or destruction. Lessee shall notify Lessor in writing within 30 days from the date of the damage or destruction as to whether or not the damage is Partial or Total." Paragraph 9.6 abates the rent for the period required to repair the damage to the degree that the tenant's use of the premises is impaired. If the landlord does not begin repairs, the tenant can terminate the lease, after giving notice.

"[C]ourts must give a '"reasonable and commonsense interpretation"' to a contract consistent with the parties' apparent intent. [Citation]." (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co*. (2003) 107 Cal.App.4th 516, 526; accord, *Department of Forestry & Fire Protection v. Lawrence Livermore National Security, LLC* (2015) 239 Cal.App.4th 1060, 1066.)

The reasonable and commonsense interpretation of the damage and destruction portion of the lease is that it refers to damage that takes place after the tenant is in possession, for example, from a fire or an earthquake. In this case, however, Pup Pup claims that the premises was already "damaged" when it entered into possession.

14

The lack of reasonableness and common sense of Pup Pup's position can be easily demonstrated. The lease requires the tenant to give notice of the "damage" within 30 days of the date of the damage and to specify whether the damage is partial (reparable in six months) or total (not reparable in six months). So what is the date of the damage to, say, the roof? Or to the air conditioning or electrical systems? According to Pup Pup, the roof was leaking and the systems were not working when it moved in, so they were "damaged" sometime before that date. But when? Did Pup Pup give the landlord the required notice, i.e., within 30 days of the date when the "damage" occurred and the "partial" or "total" specification? Not as far as we can see. The record reflects Pup Pup's complaints, but not its compliance with the terms of the lease.

In commercial unlawful detainer proceedings, the only issue in dispute is whether the tenant has paid its rent while in possession. Breaches of other covenants, such as the one to repair, are consigned to other kinds of proceedings. In this case, the evidence showed that Pup Pup was in possession of the leased premises but was significantly behind in its rent. The defense it presented was not cognizable in an unlawful detainer proceeding. Pup Pup was not entitled to any additional rent rebate, and the trial court correctly determined the amount of the unpaid rent.

### C.  Rental Value

The trial court computed the holdover damages as the monthly rent (base rent plus HOA fees) from March 1, 2020, through December 31, 2020, at $13,584.37 for 10 months, giving a total of $135,843.70. From that amount, the court subtracted $57,992 paid by Pup Pup between July and October 2020, leaving a holdover debt of $77,921.70.

Pup Pup's arguments about rental value border on the frivolous. First, it argues that the base rent was $12,043.50 throughout, not $12,284.37. "There was no evidence to support that the rental value of the Premises was higher for the period after the Notice expired, or for any other period of time." On the contrary, the evidence (i.e.,

15

the lease) showed that as of January 2020, the base rent increased from $12,043 to $12,284. Moreover, the lease defined "rent" as including the base rent *and* the HOA fees. So the court's addition of $1,300 per month to include these fees as part of the rent rested on substantial evidence.

Pup Pup also argues that the court computed the holdover damages at a higher rate than what was alleged in the unlawful detainer complaint.[15] The substantial evidence upon which the court relied to produce its higher figure was the lease itself, which provided for a rent increase for 2020. We note that the lease provided for another rent increase at the beginning of 2021, which the court did *not* use to make its calculations, even though Pup Pup was still in possession at the time of trial in January 2021.

Finally, Pup Pup argues that the Covid pandemic significantly reduced the rental value of commercial property between March and December 2020. So the rent amount in the lease was not substantial evidence of the rental value of the premises. There are two responses to this argument. First, it was never raised in the trial court, although the trial itself took place while Covid shut-down protocols were in place. It cannot be raised for the first time here. Second, even if we were to entertain this argument, Pup Pup presented no evidence whatsoever of the effect of Covid on rental values. Indeed, it presented no separate evidence whatsoever on rental value at all.[16]

It's been a while since we've seen an appeal as baseless as this one.

---

[15] Jin alleged the fair rental value was $444.78 per day, or $13,343 per month. The court computed holdover damages at $13,584.37 per month, composed of the base monthly rent for 2020 ($12,284.37) and HOA fees ($1,300 per month).

[16] Pup Pup's closing argument brief also failed to mention rental value as a disputed issue.

## DISPOSITION

The judgment is affirmed.  Respondent is to recover its costs on appeal.


                BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


MARKS, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17