Filed 8/25/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DEPARTMENT OF FORESTRY AND FIRE PROTECTION,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>LAWRENCE LIVERMORE NATIONAL SECURITY, LLC,<br><br>Defendant and Respondent. | C074655<br><br>(Super. Ct. No. 39-2011-00264903-CU-MC-STK) |

APPEAL from a judgment of the Superior Court of San Joaquin County, Linda L. Lofthus, Judge. Affirmed.

Kamala D. Harris, Attorney General, Robert W. Byrne, Senior Assistant Attorney General, Randy L. Barrow and Stephen M. Lerner, Deputy Attorneys General, for Defendant and Appellant.

Ryan & Lifter, Jill J. Lifter and Robert L. Davis for Plaintiff and Respondent.

At issue is the interpretation of two mutual aid firefighting agreements. One agreement states as relevant, "No party to this Agreement shall be required to pay

1

compensation to the other party for services rendered. The mutual advantages and protection afforded by this Agreement shall be adequate consideration." The other agreement states as pertinent that the plaintiff here, California's Department of Forestry and Fire Protection (Cal Fire), "assumes financial responsibility for aircraft, hand crew, engine, and dozer resources needed to effectively contain [a] fire" (in another jurisdiction's area that adjacently threatens an area in Cal Fire's jurisdiction).

The principal question on appeal is whether these agreements are reasonably susceptible to an interpretation that the jurisdiction receiving aid is liable for fire suppression and related costs incurred by the jurisdiction giving aid, if the jurisdiction receiving aid has negligently acquiesced in, or has negligently failed to prevent, known conditions, circumstances, or conduct that might reasonably be expected to result in the starting of the fire. Our answer, "No." Consequently, we shall affirm the summary judgment in favor of the jurisdiction that received aid here, defendant Lawrence Livermore National Security, LLC.

## FACTUAL AND PROCEDURAL BACKGROUND

The summary judgment papers disclose the following undisputed facts.

### The Two Mutual Aid Agreements at Issue

Governmental jurisdictions enter into mutual aid firefighting agreements to assist one another in fighting fires within their jurisdictions. Two such agreements are at issue here.

The first agreement was entered into in 1993 between Cal Fire and the Regents of the University of California (the UC Regents) along with 20-plus other governmental jurisdictions covering Alameda County; the UC Regents was the contractor operating the Lawrence Livermore National Laboratory at that time, on behalf of the United States

2

Department of Energy (the Department of Energy). This agreement is entitled, "Agreement for Mutual Fire Assistance" (hereafter Mutual Assistance Agreement).

As pertinent, the Mutual Assistance Agreement states:

"**5**. COMPENSATION. No party to this Agreement shall be required to pay compensation to the other party for services rendered. The mutual advantages and protection afforded by this Agreement shall be adequate consideration." (Boldface added.)

The second agreement was entered into in 1998 between Cal Fire and the "L.L.N.L. [(Lawrence Livermore National Laboratory)] Fire Department." This agreement is known as the "Threat Zone Agreement."

As pertinent, the Threat Zone Agreement states:

"**[II.A.]** A zone of threat [(i.e., a threat zone)] is [a] delineated . . . non-state responsibility area[] whereon any fire is considered a threat to [an] adjacent [state responsibility area]. In these [threat] zones, [Cal Fire] assumes financial responsibility for aircraft, hand crew, engine, and dozer resources needed to effectively contain the fire. . . . [¶] [Cal Fire] response to the delineated threat zones . . . shall be automatic upon notification by the requesting agency at predetermined alarm levels [of low, medium, or high based on burning index levels at the time of request]. [¶] . . . [¶]

"**[III.A.]** Requests for [Cal Fire] resources will be directed to [Cal Fire] Emergency Command Center . . . ."

The Threat Zone Agreement adds in section **I.**, "Such use of [Cal Fire's] resources shall be based upon availability at the time of request"; and states as its "**PURPOSE**": "[To] [e]stablish procedures and responsibilities for the use of [Cal Fire] aircraft, hand crews, engines, and dozers—other than those provided under standard mutual aid—by [governmental] agencies for fire suppression . . . ." (Boldface added.)

3

*The Parties Involved in the Fire, the Fire Site, and the Facts of the Fire*

Defendant Lawrence Livermore National Security, LLC (Lawrence Livermore LLC) is a limited liability company created specifically to manage and operate, on behalf of the Department of Energy, the Lawrence Livermore National Laboratory (the Laboratory) and the Laboratory's 7,000-acre experimental test site, known as Site 300. Lawrence Livermore LLC has managed and operated the Laboratory since October 1, 2007; prior to that date, the UC Regents did so.

On June 19, 2009, Site 300 experienced high winds, which caused an insulator attached to a power pole to detach. This created excess slack in the power line, causing that line to contact another line, resulting in arcing and sparks which ignited a dry grass fire on Site 300. Cal Fire rendered mutual aid. The fire spread beyond Site 300, into Cal Fire's jurisdiction.

*Cal Fire's Complaint Against Lawrence Livermore LLC, and the Latter's Answer*

Cal Fire sued Lawrence Livermore LLC, alleging that the latter negligently maintained the power pole insulator that resulted in the fire and that Cal Fire is entitled, under Health and Safety Code sections 13009 and 13009.1,[1] to recover the $88,754.67 Cal Fire spent suppressing that fire, plus certain related costs.[2] These two statutes allow Cal Fire to recover fire suppression and related costs from parties who negligently set a fire or allow a fire to start. (See *County of Ventura v. So. Cal. Edison Co.* (1948) 85 Cal.App.2d 529, 532 (*County of Ventura*).)

---

[1] Undesignated statutory references are to the Health and Safety Code.

[2] In its complaint, Cal Fire dubs this fire the "Explosives Fire," but the fire did not involve explosives testing. In its opening brief on appeal, Cal Fire states the "fire quickly spread beyond Site 300 into areas of Cal Fire's responsibility and continued to burn until suppressed by Cal Fire at a cost of approximately $88,754.67." The resolution of this case does not involve or turn on any distinction between the start of the fire on Site 300 in Lawrence Livermore LLC's jurisdiction, and the spread of the fire into an area in Cal Fire's jurisdiction. We will call the fire the "Site 300 fire."

4

In its answer, Lawrence Livermore LLC alleged as a fourth affirmative defense, "Plaintiff and defendant are parties to a mutual aid agreement which precludes plaintiff from recovering the damages alleged in the complaint from this answering defendant."

***The Summary Adjudication/Judgment Proceedings***

Based on their respective pleadings noted immediately above, Cal Fire moved for summary adjudication of Lawrence Livermore LLC's fourth affirmative defense, and Lawrence Livermore LLC moved for summary judgment based on that defense. Lawrence Livermore LLC prevailed and obtained judgment, the trial court remarking at the hearing, "I just think the agreement[s] [are] so clear and unambiguous . . . ."

## DISCUSSION

### I.  Preliminary Issue—Standing of Lawrence Livermore LLC

We must first consider a preliminary issue. Cal Fire contends the trial court erred in finding that Lawrence Livermore LLC has standing to enforce the Mutual Assistance Agreement and the Threat Zone Agreement against Cal Fire.

The trial court found that Lawrence Livermore LLC is the agent of the Laboratory/Department of Energy and therefore has standing to enforce both agreements against Cal Fire. We agree.

The Mutual Assistance Agreement was entered into in 1993, and the Threat Zone Agreement in 1998, when the UC Regents managed and operated the Laboratory.

The Mutual Assistance Agreement identifies the following as a party:

"[The UC Regents], Lawrence Livermore National Laboratory, operating pursuant to prime contract No. W-7405-ENG-48, . . . with the . . . Department of Energy; it being further understood that the . . . Department of Energy may fulfill its obligations, if any, under this Agreement through its operating prime contractor." (Some capitalization omitted.)

5

The operating contract for the Laboratory between Lawrence Livermore LLC and the Department of Energy states as pertinent as to party:

"CONTINUATION OF PREDECESSOR CONTRACTOR'S OBLIGATIONS—

"On October 1, 2007, [Lawrence Livermore LLC] shall assume responsibility and will continue to perform any existing agreements . . . entered into under Contract No. W-7405-ENG-48, by the predecessor contractor [(the UC Regents)]. These agreements . . . include all . . . agreements with . . . state regulatory agencies . . . ."

Thus, Lawrence Livermore LLC continued to fulfill the obligations under the Mutual Assistance Agreement previously fulfilled by the UC Regents, when it (Lawrence Livermore LLC) became the Laboratory's operating contractor for the Department of Energy on October 1, 2007. This continuation of contractor obligations benefitted Cal Fire under the Mutual Assistance Agreement. Cal Fire never objected to Lawrence Livermore LLC continuing such obligations as the Department of Energy's agent. Consequently, Lawrence Livermore LLC can enforce the Mutual Assistance Agreement against Cal Fire.

As for the Threat Zone Agreement, the parties to it were Cal Fire and the "L.L.N.L. [(Lawrence Livermore National Laboratory)] Fire Department." Again, Lawrence Livermore LLC, as the Laboratory's operating contractor, has assumed responsibility for fire duties at the Laboratory and Site 300. The evidence presented in the summary judgment/adjudication motions showed that the L.L.N.L. Fire Department was staffed by personnel employed by the UC Regents until Lawrence Livermore LLC became the Laboratory's operating contractor; at that point, the L.L.N.L. Fire Department became staffed by personnel employed by the Alameda County Fire Department under contract with Lawrence Livermore LLC. Consequently, Lawrence Livermore LLC can enforce the Threat Zone Agreement against Cal Fire.

6

## II.  Standard of Review

On appeal from a summary judgment based on a trial court's interpretation of a contract, we are not bound by that interpretation (1) if there is no extrinsic evidence concerning its interpretation, (2) if there is no conflict in such evidence, or (3) if, as here, the conflicting extrinsic evidence is of a written nature only.  In these three situations, the trial court is in no better interpretive position than are we to construe the summary judgment-determinative agreement.  (*Milazo v. Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1534.)

" ' "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party.  If it is not, the case is over.  [Citation.]  If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question:  what did the parties intend the language to mean?" ' [Citation.]  . . . Thus, where ' "contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further." ' [Citation.] 'If the contract is capable of more than one reasonable interpretation, it is ambiguous [citations], and [we] . . . apply[] the standard rules of interpretation in order to give effect to the mutual intention of the parties [citation].' . . . [¶] . . . [¶] In sum, courts must give a ' "reasonable and commonsense interpretation" ' of a contract consistent with the parties' apparent intent." (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 524-526 (*Lockyer*).)

### III.  The Interpretation of the Mutual Assistance Agreement and the Threat Zone Agreement

As noted, the Mutual Assistance Agreement states as relevant, "No party to this Agreement shall be required to pay compensation to the other party for services rendered. The mutual advantages and protection afforded by this Agreement shall be adequate consideration."

7

And the Threat Zone Agreement echoes that Cal Fire "assumes financial responsibility for aircraft, hand crew, engine, and dozer resources needed to effectively contain the fire" (here, the fire was in Lawrence Livermore LLC's jurisdiction at Site 300, which is an area that threatens an area under Cal Fire's jurisdiction; this threat zone agreement presents a special mutual aid situation).

This unconditional quoted language in these two agreements is not reasonably susceptible to Cal Fire's interpretation of them—that if the jurisdiction receiving aid is negligently responsible for the fire, that jurisdiction is liable under sections 13009 and 13009.1 for the fire suppression and related costs incurred by the jurisdiction giving aid. As such, the case is over for Cal Fire. (*Lockyer*, *supra*, 107 Cal.App.4th at p. 524.)

But even assuming for the sake of argument that the two agreements are reasonably susceptible to Cal Fire's interpretation, we arrive, as we shall explain, at the same spot—Cal Fire's case is without merit.

Sections 13009 and 13009.1—which provide the statutory basis for Cal Fire's complaint against Lawrence Livermore LLC—state as relevant:

"Any person . . . who negligently . . . sets a fire, allows a fire to be set, or allows a fire kindled or attended by him or her to escape onto any public or private property . . . is liable for[:]

"[t]he fire suppression costs incurred in fighting the fire and for the cost of providing rescue or emergency medical service . . . " (§ 13009, subd. (a));

"[t]he cost of investigating and making any reports with respect to the fire[; and]

"[t]he costs relating to accounting for that fire and the collection of any funds pursuant to Section 13009 . . . " (§ 13009.1, subd. (a)(1) & (2)).

The section 13009/13009.1 language of "negligently . . . allows a fire to be set" has been interpreted as extending to "a negligent acquiescence in, or [a negligent] failure

8

to prevent[,] known conditions, circumstances, or conduct which might reasonably be expected to result in the starting of a fire." (*County of Ventura*, *supra*, 85 Cal.App.2d at p. 532.)

Cal Fire's principal interpretive argument on appeal is that the trial court (1) erroneously concluded that the Mutual Assistance Agreement and the Threat Zone Agreement apply to the Site 300 fire, since these agreements do not apply when the fire is started negligently by a signatory to them, and (2) erroneously found, in related fashion, that Cal Fire waived its section 13009/13009.1 right to recover fire suppression and related costs for negligently started fires, in these two agreements.

The language of the two agreements, quoted above, neither mentions sections 13009 and 13009.1 nor anything at all on the negligence-based, cost-recovery right they embody. Again, under the plain language of the two agreements, the jurisdiction receiving aid does not have to pay the costs of the jurisdiction giving aid, the mutual protection being sufficient consideration.

On appeal, Cal Fire concedes it was aware of its section 13009/13009.1 statutory right to recover fire suppression and related costs when it signed the two agreements. Cal Fire could hardly do otherwise. As Lawrence Livermore LLC correctly notes in its brief, there is a line of published decisions involving Cal Fire's (or its predecessor's) efforts to recover such costs dating back at least three decades before Cal Fire signed the Mutual Assistance Agreement in 1993. (See, e.g., *People v. Williams* (1963) 222 Cal.App.2d 152; *Giorgi v. Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355; *People v. Southern Pacific Co.* (1983) 139 Cal.App.3d 627.)

Doubtless, fires commonly result from negligence of some sort. Cal Fire, being in the forest fire business, is well acquainted with controlled burns, where negligence is a paramount concern. Coupling these two undisputed facts with Cal Fire's extensive knowledge of, and experience with, its section 13009/13009.1 right to recover fire

9

suppression and related costs, we too find that Cal Fire waived—i.e., knowingly and intentionally relinquished—this statutory right in the Mutual Assistance Agreement and the Threat Zone Agreement.  (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [" ' "[w]aiver is the intentional relinquishment of a known right after knowledge of the facts" ' "].)

Cal Fire counters that, while it was aware of its section 13009/13009.1 right to recover fire suppression and related costs, it was unaware that it was waiving this right by signing either agreement.  Based on summary judgment declarations, Cal Fire states:  "Because the parties never discussed waiving this right and Lawrence Livermore [LLC's] sole negotiator was unaware of this right when he negotiated both agreements, the parties could not have intended to waive this right."

However, that sole negotiator, John A. Sharry, in a declaration supporting Lawrence Livermore LLC's summary judgment motion, declared:  "Though in negotiating the terms of the Mutual [Assistance] Agreement the parties did not specifically address it, the intent of the Mutual [Assistance] Agreement is for each party to provide mutual aid under [that agreement] without regard to whether one of the parties started a fire for which mutual aid is sought or given."  As we have seen, that is how the relevant language of the Mutual Assistance Agreement and the Threat Zone Agreement reads.  And, with respect to the interpretive issue of waiver raised on appeal by Cal Fire, the focus is on *whether Cal Fire waived* its known section 13009/13009.1 right to recover fire suppression and related costs.

Furthermore, Cal Fire states in its opening brief that it entered into the Mutual Assistance Agreement and the Threat Zone Agreement "[p]ursuant to section 13050." Under that statute and its corresponding statutes, the "equipment and firefighting force of any public entity may be used for the purpose of providing fire protection or firefighting services . . . [i]n any other public entity with the [latter's] consent . . . " (§ 13050, subd.

10

(a)); "[t]he reasonable value of th[at] use . . . may constitute a charge against the public entity in which the firefighting services are furnished" (§ 13051); and "[t]he public entity rendering the service may present a claim to the public entity liable therefor" (§ 13052). The compensation language in the Mutual Assistance Agreement and the Threat Zone Agreement, as noted, is directly contrary to this compensation language. This is one more indication that Cal Fire did not intend to invoke its section 13009/13009.1 right to recover fire suppression and related costs in these two agreements.

Finally, Cal Fire's interpretation of the Mutual Assistance Agreement and the Threat Zone Agreement, as the summary judgment evidence shows, undermines the contractual-based mutual aid framework here. Again, fires commonly result from negligence. The negligence underlying the section 13009/13009.1 right to recover fire costs has been broadly defined to extend to a negligent acquiescence in, or a negligent failure to prevent, known conditions, circumstances, or conduct that might reasonably be expected to result in the starting of a fire. (*County of Ventura*, *supra*, 85 Cal.App.2d at p. 532.) If Lawrence Livermore LLC is liable to Cal Fire under sections 13009 and 13009.1 , notwithstanding the two agreements at issue here, for negligently allowing the Site 300 power pole-insulator fire to start (under this broad definition), how will such liability be contained? Under Cal Fire's interpretation of the two agreements at issue, if a mutual aid jurisdiction (and not simply its fire department) has been negligent somehow, somewhere, over the vast expanse of its territory—and if such negligence leads to a fire—that jurisdiction must pay for any mutual aid rendered. To adopt Cal Fire's reading of the two agreements here would undercut the spirit and camaraderie underlying the contractual-based mutual aid framework at issue here, and would inhibit jurisdictions from invoking mutual aid. If one's barn is on fire, the good neighbor runs to help fight

11

it—no questions asked—knowing he can be assured of the same protection should a similar fate befall him.**3**

Admittedly, one can argue that our interpretation of the Mutual Assistance Agreement and the Threat Zone Agreement may lead a jurisdiction to insufficiently maintain its own firefighting force or to act negligently in some other way, knowing it can rely on its mutual agencies without consequence. However, a deficient agency is also a mutual agency and once its neighboring agencies realize this state of affairs, the agency will likely soon be left to its own devices, as a practical matter if not also a formal one. The Mutual Assistance Agreement states as relevant that "[i]n the event that a party to this Agreement is unable to fulfill its obligations to the Agreement on a continuing basis, that party may be removed from the obligations and benefits of the Agreement by the written mutual consent of the Fire Chiefs of the other parties."

We conclude that the Mutual Assistance Agreement and the Threat Zone Agreement are not subject to Cal Fire's interpretation; Lawrence Livermore LLC's interpretation of the two agreements is the correct one.

Perhaps realizing the forces arrayed against its interpretation, Cal Fire argues that (1) the Mutual Assistance Agreement does not even apply here because Cal Fire did not dispatch resources pursuant to it, as Lawrence Livermore LLC did not make a formal

---

**3** Somewhat similar sentiments underlie the decision in *People ex rel. Grijalva v. Superior Court* (2008) 159 Cal.App.4th 1072. There, the Court of Appeal held that a public entity's recovery of firefighting costs under sections 13009 and 13009.1 cannot, consistent with the fire protection immunity statutes (Gov. Code, §§ 850, 850.2, 850.4), be reduced based on its own negligence or its own failure to minimize firefighting costs, and, therefore, the affirmative defenses of comparative fault and failure to mitigate damages cannot be available in an action to recover such costs. (*Grijalva*, *supra*, at pp. 1077-1078.) The fire protection immunity statutes have not been raised as an issue here, but under Cal Fire's interpretation of the two agreements at issue, these statutes might add further complexity.

request to do so, and (2) the trial court erred in applying the Threat Zone Agreement to areas outside the threat zone (i.e., outside Site 300).

As to the first point, the Mutual Assistance Agreement does not explicitly contain a request provision, though the Threat Zone Agreement does (although Cal Fire argues that a response under the Threat Zone Agreement is automatic).[4]

We are not sure what to make of Cal Fire's second point. The citation to the record that Cal Fire provides in its opening brief to support this point is from the trial court's ruling, which stated, as relevant, only that, "[P]ursuant to the terms of the [Threat Zone] [A]greement, when the fire started on Site 300[,] . . . [Cal Fire] assumed financial responsibility for its firefighting efforts *in the* [*threat*] *zone.*" (Italics added.)

In any event, these two points do not overcome the undisputed facts that a fire started on Site 300; that Cal Fire provided mutual aid to help fight that fire; that under both agreements at issue, the jurisdiction receiving aid does not have to pay the costs of the jurisdiction giving aid, mutual aid protection being an adequate consideration; and that the Threat Zone Agreement explicitly acknowledges its special role in the general mutual aid framework (stating as its purpose, "[To] [e]stablish procedures and responsibilities for the use of [Cal Fire] aircraft, hand crews, engines, and dozers—other

---

[4] As relevant, the Threat Zone Agreement states that "[Cal Fire] response to the delineated threat zones . . . shall be automatic upon notification by the requesting agency at predetermined alarm levels [(low, medium, high)]"; that "[r]equests for [Cal Fire] resources will be directed to [Cal Fire] Emergency Command Center [(phone number provided)]"; and that "[s]uch use of [Cal Fire's] resources shall be based upon availability at the time of request."

13

than those provided under standard mutual aid—by [governmental] agencies for fire suppression . . . ").[5]

---

[5] Finally, Cal Fire raises three points that merit only footnote consideration.

First, Cal Fire asserts the trial court erred by interpreting the Mutual Assistance Agreement as limiting Cal Fire's exclusive remedy for fire suppression costs to a federal statute (15 U.S.C. § 2210). Under that statute, which the Mutual Assistance Agreement explicitly recognizes as still applicable, a fire agency that has fought a fire on federal land may file a federal claim to recover its direct expenses and losses in fighting the fire. Cal Fire's argument is that this statute does not preclude a state agency from pursuing recovery of its fire suppression costs against the United States under the federal Tort Claims Act (28 U.S.C. § 1346). We express no views on this argument, other than to say it is inapplicable here to the extent it runs counter to our interpretation of the Mutual Assistance Agreement.

Second, Cal Fire contends the trial court did not sustain any objections to Cal Fire's evidence offered in opposition to Lawrence Livermore LLC's summary judgment motion, and, to the extent it did, the trial court erred. However, the trial court did sustain Lawrence Livermore LLC's objections to identical evidence offered by Cal Fire in support of its summary adjudication motion. And the trial court did not err. This evidence went to Cal Fire's "reasonably susceptible" interpretation of the Mutual Assistance Agreement and the Threat Zone Agreement. As we have seen, those two agreements are not subject to such an interpretation and, even if we assume they are, Cal Fire still loses.

And, third, by failing to separately head the point in its brief, Cal Fire has forfeited its contention that Lawrence Livermore LLC served its summary judgment motion one day late. (Cal. Rules of Court, rule 8.204(a)(1)(B).)

14

## DISPOSITION

The judgment is affirmed.  Defendant Lawrence Livermore LLC shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)  (***CERTIFIED FOR PUBLICATION***)


                                                        BUTZ , J.


We concur:


HULL , Acting P. J.


HOCH , J.

15