Filed 12/15/23  Blalock v. Halt Gold Group CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JACOB BLALOCK and BENJAMIN NOVAK, <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> HALT GOLD GROUP, LLC (dba PATRIOT GOLD GROUP LLC et al., <br><br> Defendants and Respondents. | B324196 <br><br> (Los Angeles County Super. Ct. No. 19STCV35566) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia R. Martin, Judge.  Affirmed in part, reversed in part and remanded.

Fernald & Zaffos, Brandon C. Fernald, Clay R. Wilkinson and Adam P. Zaffos for Plaintiffs and Appellants.

Sheppard Mullin Richter & Hampton, Tracey A. Kennedy, Brianna S. Wilson, Emily A. Papania and Y. Douglas Yang for Defendants and Respondents.

## INTRODUCTION

Plaintiffs Jacob Blalock and Benjamin Novak (collectively, plaintiffs) were two of six founding members as well as employees of Halt Gold Group, doing business as Patriot Gold Group, LLC (Patriot). After a year, Patriot terminated plaintiffs' employment and later removed them as members for "cause." Plaintiffs filed the instant lawsuit against Patriot and its remaining four members for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and declaratory judgment. The gravamen of the complaint was that plaintiffs' removal as members for "cause" violated Patriot's operating agreement that was entered into by the founding members. The trial court granted Patriot and the remaining members' motion for summary judgment.

On appeal, plaintiffs challenge the court's order granting summary judgment and resulting judgment as to Patriot only, not as to the individual members. We reverse the judgment, and the order granting summary judgment as to Patriot. We affirm the grant of summary adjudication on the issues of (1) whether Patriot was required to permit plaintiffs to vote on each other's removal as members of Patriot and (2) whether Patriot was required to give plaintiffs advance notice of their removal for "cause" as members of Patriot. We also affirm summary adjudication on the conversion and declaratory judgment claims. We reverse the grant of summary adjudication on the issue of whether plaintiffs were removed as members for "cause." We remand the matter for further proceedings.

2

## FACTUAL AND PROCEDURAL BACKGROUND

I.    *Membership Interest*

In March 2016, Patriot was founded by members Jacob Blalock, Benjamin Novak, Mike Celano, Charley Chartoff, John "Jack" Hanney, and Brothers Investment, LLC (by Alexander Orbison).  On April 4, 2016, the members entered into the amended and restated operating agreement (operating agreement), effective March 15, 2016.  The purpose of the operating agreement was for the "marketing and sales of precious metals and facilitation services related to the same."  The operating agreement set forth the duties and obligations of Patriot and its members and governed Patriot's operations and the actions of its members.  A member's ownership stake in Patriot was referred to as the "membership interest."  The "membership interest" was measured by "identifiable units of measurement issued to the [m]embers" and known as "membership units."

The operating agreement was comprised of twelve distinct articles, each of which contained its own numbered sections.  As relevant here, section 6.4.1 of article VI, titled "Members," of the operating agreement permitted Patriot to "act to remove a [m]ember's [m]embership [u]nits and all associated rights at any time for '[c]ause' *by unanimous vote of all [m]embers other than the [m]ember whose actions had precipitated the vote for removal and providing notice to the [m]ember* wherein '[c]ause' means [m]ember's conviction of a felony . . . ; commission of fraud, embezzlement, or *other misappropriation on [m]ember's part which has/is a detrimental impact on [Patriot's] finances, reputation, business, or goodwill*; [m]ember's willful failure to perform his material duties, which failure is not cured within ten (10) business days after the date on which [Patriot] gives notice to the [m]ember of such failure; or [m]ember's willful material breach of [m]ember's

3

obligations with respect to [Patriot's] conflicts of interest policy or any other rules or regulations of engagement which may be adopted or amended from time to time by [Patriot] of which [Patriot] has given written notice to the [m]ember." (Italics added.) Section 6.4.2 of the operating agreement provided when a member was removed, his or her membership units would "be surrendered, redeemed and valued on the date of such [r]emoval."

## II.    *Employment*

In addition to being members, plaintiffs were also employed by Patriot as gold brokers. Plaintiffs entered into identical employment agreements, effective April 1, 2016. The agreements specified that any membership interest held in Patriot and any rights related to that membership were defined in the operating agreement and "shall have no bearing or effect on this [employment] [a]greement or any terms found herein."

## III.    *Termination of Employment*

On May 8, 2017, plaintiffs were both terminated from their employment with Patriot. Plaintiffs received termination letters informing them that their "employment with Patriot [was] terminated, effective immediately" but stated their membership interests held in Patriot were "not directly impacted by this decision." The letters reminded plaintiffs they were "bound by [Patriot's] confidentiality policy." Plaintiffs' computer access was terminated that morning, and their parking and building access cards were deactivated that day.

4

IV.  *Post-Termination Office Visit*

Plaintiffs sent separate text messages to Celano[1] and informed him that they would be returning to the office on May 9, 2017 to retrieve some personal items.  Celano did not respond to the text messages.

On May 9, 2017, Novak "briefly" entered the office and "noticed it ha[d] been rifled through and [his] items had been moved."  In addition, "[n]othing of any commercially sensitive nature relating to Patriot was left."  Similarly, Blalock entered the office "but was too embarrassed and distraught to go any further" and decided to wait outside for Novak.  Celano and Chartoff watched plaintiffs as they left the office.  Hanney was also in the office, but not within eyesight.

Celano was later informed by two Patriot employees, Andrew Clay and William Moore,[2] that they saw plaintiffs enter the office on May 9, 2017 and remove documents from their workstations.  In his deposition, Clay admitted he did not actually know what items Novak was carrying out of his office.  Celano launched an internal review to determine what plaintiffs removed from the office that day.  He discovered that lead sheets[3] and a hard copy of Patriot's customer list "went missing immediately after" plaintiffs left the

---

[1]  Section 5.9.1 of article V, titled "Management of Day to Day Operations," of the operating agreement provided that members "shall elect, from time to time, a [m]ember who shall be named and act as [Patriot's] 'Lead Member' until relieved of [his or her] duties."  A lead member would be responsible for the day-to-day management of Patriot's business and affairs.  Celano had been serving as the lead member since Patriot's formation.

[2]  No sworn testimony was filed from William Moore in support of the summary judgment motion.

[3]  Patriot employees maintained documents called "lead sheets" for each Patriot customer.  The lead sheets included information about sales to customers, among other customer details.

office. Novak maintained hard copies of lead sheets containing customer information at his workstation and those documents "went missing." Celano opined plaintiffs took lead sheets and "other Patriot company documents."

However, plaintiffs denied they took "any customer list or anything else that would be considered commercially sensitive to Patriot."

## V. *Formation of Orion Precious Metals, Inc.*

On May 16, 2017, plaintiffs filed articles of incorporation with the State to form a new company called, Orion Precious Metals, Inc. (Orion). Plaintiffs had not planned on going "into business at that point," and Orion was a "backup" plan. Plaintiffs reached out to clients that "were already [their] clients or known to [them] before joining Patriot or those that were [their] clients while at Patriot." Plaintiffs informed those clients that they were no longer with Patriot and were now at Orion.

On May 17, 2017, Patriot sent a letter to plaintiffs stating that it was aware plaintiffs planned to form a competitive business. The letter reminded plaintiffs of their post-termination confidentiality obligations concerning their duty not to disclose any confidential information belonging to Patriot.

On July 27, 2017, plaintiffs entered into a shareholder agreement with Orion investors. Plaintiffs stated that Orion began its operations in September 2017. Patriot members first learned plaintiffs were soliciting customers in September 2017.

## VI. *Removal as Members*

On August 1, 2017, plaintiffs filed a wrongful termination lawsuit against Patriot. (*Jacob Blalock, et al. v. Halt Gold Group, LLC, et al.* (LA Super. Ct. case No. BC670702.)

On August 2, 2017, Patriot members Chartoff, Hanney, Orbison, and Celano met and voted to remove plaintiffs as members of Patriot for "cause" and to reacquire their membership units. The members adopted and issued a written resolution, dated August 3, 2017. The resolution stated the members "other than Jacob Blalock and Benjamin Novak (the '[m]ember')" met and discussed on August 2, 2017 plaintiffs' termination of employment. The resolution also stated members were informed the day before the vote that plaintiffs filed a wrongful termination lawsuit against Patriot. The resolution then stated the "[m]embers waive any [n]otice requirements for Members Meeting and have together discussed and unanimously agree that the membership units of Jacob Blalock and Benjamin Novak representing their [m]embership [i]nterests in [Patriot], should be reacquired by [Patriot] because of their prior and continuing actions and conflicts created by such actions."

In a letter dated August 3, 2017, Patriot notified plaintiffs that it exercised its right to purchase their membership interests in Patriot. Several days later, each plaintiff received a check for their membership interests in Patriot.

In a letter dated October 16, 2017, Patriot addressed "the ongoing misappropriation of trade secrets belonging to [Patriot] by [Orion], a business that is owned and operated by [plaintiffs]." Patriot noted that Orion is a direct competitor of Patriot. The letter stated that plaintiffs entered the Patriot office on May 9, 2017 "without authorization and removed several proprietary, commercially-sensitive documents belonging to [Patriot], including but not limited to a customer list belonging to Patriot . . . . They did so at a time when they were members of [Patriot] in breach of the fiduciary duty owed to [Patriot]." Plaintiffs "then formed and opened Orion

7

several weeks later and began using the customer list they misappropriated from [Patriot] to solicit its clients to transfer their business to Orion." The letter concluded these actions constituted "unlawful misappropriation of [Patriot's] trade secrets."

Plaintiffs sent a letter in response, denying Patriot's allegations. Specifically, plaintiffs denied that they took anything of a confidential or proprietary nature from the office on May 9, 2017 and that they did not compete with Patriot's business until September 2017, after they were removed as members.

VII.  *Complaint and Motion for Summary Judgment*

On October 4, 2019, plaintiffs filed the operative complaint alleging four causes of action: breach of contract; breach of the implied covenant of good faith and fair dealing; conversion; and declaratory judgment. The gravamen of the complaint was that Patriot improperly removed plaintiffs as members and seized their membership units.

On May 23, 2022, Patriot moved for summary judgment or, alternatively, summary adjudication on the following three issues related to plaintiffs' breach of contract claim: (1) section 6.4 of the operating agreement did not require Patriot to provide plaintiffs with advance notice of their removal for "cause;" (2) section 6.4 of the operating agreement did not require Patriot to permit plaintiffs to vote on each other's expulsion as members of Patriot when Patriot removed them simultaneously for "cause;" (3) plaintiffs were removed as members for "cause" under section 6.4 of the operating agreement.[4] Patriot also moved for summary

---

[4]    This issue was more broadly worded in Patriot's summary judgment motion, stating that the breach of contract claim fails because plaintiffs

8

adjudication on the conversion and declaratory judgment claims. In support of the motion, Patriot attached: the operating agreement; declarations of the remaining four members; deposition testimony of Chartoff and Orbison;[5] the declaration of Patriot employee, Clay; deposition testimony of Blalock as the person most knowledgeable of Orion; the May 8, 2017 termination of employment letters; the August 3, 2017 resolution along with Patriot's letter to plaintiffs; and the August 7, 2017 letter to plaintiffs about the acquisition of membership units.

In opposition, plaintiffs contended the operating agreement unambiguously required (1) Patriot to give notice to plaintiffs prior to removal and (2) a unanimous vote of all members other than the member whose membership units were being reacquired. Also, plaintiffs argued there was a triable issue of material fact concerning whether their membership interests were reacquired for "cause" under the terms of the operating agreement. In support of the opposition, plaintiffs attached: their declarations; Patriot's discovery responses; and the October 16, 2017 letter from Patriot and plaintiffs' response.

In reply, Patriot argued plaintiffs were removed as members for "cause" under the operating agreement and in any event, Patriot is insulated from judicial scrutiny under the business judgment rule. Patriot attached, among other documents, Orion's shareholder agreement.

---

cannot establish that Patriot breached the material terms of the operating agreement (and the buy-sell agreement). However on appeal, both parties narrow their focus on whether Patriot removed plaintiffs for "cause."

[5] The trial court sustained plaintiffs' evidentiary objections to the entirety of Celano's and Hanney's deposition testimony (Exhibits G and J).

9

After a hearing, the trial court granted the motion for summary judgment and entered judgment in Patriot's favor.[6]

Plaintiffs timely appealed the judgment.

## DISCUSSION

On appeal, plaintiffs argue there is a triable issue of material fact on the breach of contract claim as to the following: (1) whether section 6.4 of the operating agreement required Patriot to permit plaintiffs to vote on each other's removal as members of Patriot; (2) whether Patriot was required to provide plaintiffs with advance notice of their removal for "cause" under section 6.4 of the operating agreement; and (3) whether plaintiffs were removed as members for "cause" under the terms of the operating agreement. In addition, plaintiffs contend there are triable issues of material fact as to the conversion and declaratory judgment claims.[7]

---

[6]      Plaintiffs filed a motion for summary adjudication as to their breach of contract and conversion claims prior to Patriot (and its remaining members) filing the motion for summary judgment.  The trial court denied the motion.  Plaintiffs subsequently filed a writ of mandate, which this court denied.  In its opening brief, Patriot refers numerous times to plaintiffs' failed motion for summary adjudication and subsequent writ of mandate.  Those rulings are not relevant to the issues on appeal.  An order denying a motion for summary adjudication "simply establishes the existence of a triable issue of fact.  It does not decide the issue." (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1009; see also *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1086 ["[d]enial of a motion for summary judgment does not establish any fact or resolve any issue; it merely determines that the issues will be decided later, at the time of trial"].)

[7]      Defendants assert, and we agree, plaintiffs forfeited the other issues adjudicated by the trial court on the breach of contract claim, the breach of implied covenant of good faith and fair dealing claim, and punitive damages. (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1345–1346, fn. 6

10

I.    *Governing Principles and Standard of Review*

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)  A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense.  (*Id.*, subd. (p)(2).)  If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact.  (*Ibid.*)  A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  "While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny.  [Citation.]" (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)

II.    *Breach of Contract*

The standard elements of a breach of contract claim are (1) the existence of a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damage to the

["an appellant's failure to raise an issue in its opening brief [forfeits] it on appeal"].)

11

plaintiff.  (*Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 999.)

A. *Voting for Removal*

Plaintiffs contend the trial court erred in concluding that section 6.4 of the operating agreement was not reasonably susceptible to their proposed interpretation of the unanimous vote required for the removal of a member. Plaintiffs assert that the operating agreement as a whole demonstrates that their proposed interpretation is not only reasonable but also the correct interpretation of the provision.

"The rules governing the role of the court in interpreting a written instrument are well established.  The interpretation of a contract is a judicial function.  [Citation.]  In engaging in this function, the trial court 'give[s] effect to the mutual intention of the parties as it existed' at the time the contract was executed.  [Citation.]  Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms.  [Citation.]" (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125–1126.)  "On appeal from a summary judgment based on a trial court's interpretation of a contract, we are not bound by that interpretation . . . if there is no extrinsic evidence concerning its interpretation." (*Department of Forestry & Fire Protection v. Lawrence Livermore National Security, LLC* (2015) 239 Cal.App.4th 1060, 1066; see also, *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166 [where no extrinsic evidence was admitted, "the appellate court will independently construe the writing"].)  Here, no extrinsic evidence was submitted by either party. Rather, both parties relied on the plain language of the operating agreement.

As noted, section 6.4.1 permits Patriot to remove a member "by unanimous vote of all [m]embers other than the [m]ember whose actions had precipitated the vote for removal." Because "other than the [m]ember" refers to a single member, plaintiffs argue that the operating agreement only allowed for the removal of one member at a time. In addition, if the parties intended to remove more than one member at a time, they would have drafted the operating agreement consistent with that intention. In response, Patriot contends, as the trial court found, that interpretation would be absurd because each member could act as a holdout and prevent removal even where there is "cause." In their appellate brief and at oral argument, Patriot supports its position by pointing to plaintiffs' declarations in which both individuals admit they would have "oppose[d] the vote to remove [each other's] units and would have voted against any such resolution." We are persuaded that plaintiffs' interpretation is not a reasonable one. (*West Pueblo Partners, LLC v. Stone Brewing Co., LLC* (2023) 90 Cal.App.5th 1179, 1185 ["court[s] 'should avoid an interpretation which will make the contract unusual, extraordinary, harsh, unjust or inequitable [citations], or which would result in an absurdity . . . .' [Citation.]"].) We decline to adopt such a narrow view of the operating agreement and ignore the impossible situation these two (admittedly) holdout members posed to Patriot's operations. (See Civ. Code, § 1653 ["Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected"].) Therefore, we conclude the court did not err in finding that section 6.4 was not reasonably susceptible to plaintiffs' proposed interpretation of the removal of a member by unanimous vote.

13

B. *Notice of Removal*

Plaintiffs contend the trial court erred in concluding that section 6.4 of the operating agreement was not reasonably susceptible to their proposed interpretation of the notice Patriot was required to give plaintiffs prior to their removal for "cause." Plaintiffs assert that the operating agreement as a whole demonstrates that their proposed interpretation is not only reasonable but also the correct interpretation of the provision. We disagree. The unambiguous language of section 6.4.1 provides that Patriot is entitled to remove a member "at any time" for "cause." Its only notice obligation in this section was to "provid[e] notice to the [m]ember" after he or she has been removed for "cause." Thus, there is no requirement for Patriot to provide advance notice to a member who is subject to a removal vote by its members.

On appeal, plaintiffs focus on Patriot's notice requirements to inform members about an upcoming meeting (as discussed in section 5.4),[8] rather than the notice required for a member subject to removal for "cause." However, that is not the issue presented in the motion for summary judgment nor was it argued by plaintiffs in the opposition. Therefore, it is not an issue before us.

---

[8]     Section 5.4, titled "Notice of Meetings" provides: "[w]ritten notice stating the place, day and hour of the meeting shall be delivered to each Member not less than two (2) nor more than thirty (30) days before the date of the meeting, either personally, by mail, by fax or by email with return authorization receipt by or at the direction of the Members. Notice of a meeting need not be given to a Member who signs a waiver of notice, whether before or after the meeting, or who attends the meeting without protesting the lack of notice before or at its commencement."

14

C. *Removal for "Cause"*

Plaintiffs argue there is a triable issue of material fact as to whether they were removed for "cause" under section 6.4 of the operating agreement. We agree.

As pertinent here, section 6.4.1 of the operating agreement defines "cause" as a "misappropriation on [a] [m]ember's part which has/is a detrimental impact on [Patriot's] finances, reputation, business, or goodwill" and also includes "[m]ember's willful material breach of [m]ember's obligations with respect to [Patriot's] conflicts of interest policy or any other rules or regulations of engagement which may be adopted or amended from time to time by [Patriot] of which [Patriot] has given written notice to the [m]ember."[9]  Patriot contends there is no triable issue of material fact that plaintiffs were removed for "cause," consistent with the operating agreement. The basis for the assertion is that plaintiffs misappropriated Patriot's confidential customer information and in so doing significantly harmed Patriot's finances, reputation, business, and goodwill.

Patriot presented evidence demonstrating that on May 9, 2017, plaintiffs entered Patriot's office and removed items.  At some point after plaintiffs left the office that day, Patriot learned certain highly confidential and proprietary company documents were missing and concluded plaintiffs removed them.  In response, plaintiffs put forth evidence establishing that no

---

[9]     In support of its finding of "cause" for removal, Patriot speaks in generalities as to the conflict of interest created by plaintiffs and plaintiffs' breach of the duty of loyalty to Patriot.  In their briefing in both the lower court and this court, Patriot fails to point to a specific written policy or document other than the operating agreement to establish "cause" for removal.  Rather, Patriot applies the Corporations Code to redefine "cause." We decline to apply the Corporations Code as the plain language of the operating agreement controls.

15

Patriot employee or member personally witnessed what items plaintiffs had removed from the office on May 9, 2017. In his declaration, Celano stated that two Patriot employees (Clay and Moore) informed him that they saw plaintiffs remove documents from their workstations. However, Clay admitted in his deposition that he did not actually know what items Novak was carrying out of his office, and no sworn testimony was filed by Moore. In addition, Novak attested that he had "briefly" entered the office and "noticed it ha[d] been rifled through and [his] items had been moved." And "[n]othing of any commercially sensitive nature relating to Patriot was left." Similarly, Blalock attested that he entered the office "but was too embarrassed and distraught to go any further" and decided to wait outside for Novak. Both plaintiffs denied they took "any customer list or anything else that would be considered commercially sensitive to Patriot."

In further support of removal, Patriot presented evidence that plaintiffs formed a competing business while they were members of Patriot. Patriot argues this act also demonstrates a "significant conflict of interest" created by plaintiffs as well as a breach of plaintiffs' duty of loyalty to Patriot. After their termination of employment and prior to removal, plaintiffs filed articles of incorporation with the State for Orion and then executed a shareholder's agreement with investors. However, Patriot did not present evidence that Orion was competing with Patriot at that time. In fact, Patriot members attested they learned Orion began operating in September 2017 (after removal) and plaintiffs confirmed the same timeline in their declarations. Thus, we conclude the parties' competing evidence establishes a triable issue

16

of material fact as to whether plaintiffs were removed for "cause" consistent with the operating agreement.[10]

III. *Conversion*

Plaintiffs contend the trial court erred in granting summary adjudication as to their conversion claim on the ground that it was based on the same factual allegations in the breach of contract claim and such allegations alone cannot form the basis for a tort claim. On appeal, plaintiffs argue the conversion claim "included an element of wrongful conduct above and beyond their breach of contract claim." Specifically, Patriot's act of reacquiring their membership units under the operating agreement was "wrongful, malicious, fraudulent, and in conscious disregard" of plaintiffs' rights. We disagree.

It is well-settled that "'"a breach of contract, even though it result[s] in injury to, or loss of, specific property, [cannot] constitute[ ] a conversion."' [Citation.]" (*Multani v. Knight* (2018) 23 Cal.App.5th 837, 854; *Emmert v. United Bank etc. Co.* (1936) 14 Cal.App.2d 1, 4 [same].) "[C]onduct amounting to a breach of contract becomes tortious only when it also violates

---

[10] Patriot also argues the business judgment rule precludes judicial review of Patriot's finding that it had "cause" to remove plaintiffs. (See *Palm Springs Villas II Homeowners Assn., Inc. v. Parth* (2016) 248 Cal.App.4th 268, 279 [the business judgment rule "'refers to a judicial policy of deference to the business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions'"].) Because we conclude there is a triable issue of material fact as to whether plaintiffs were dismissed for "cause," we need not address Patriot's argument. (See *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 388 [company's decision is not scrutinized under the business judgment rule until after the court determines that the company's action falls within the discretionary range of action authorized by the contract].)

17

a duty independent of the contract arising from principles of tort law. [Citation.]" (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 551.) Here, the conversion claim is based entirely on Patriot's alleged breach of the operating agreement. Plaintiffs fail to allege that Patriot violated any duty "independent of the contract." Thus, we affirm the trial court's order granting summary adjudication as to the conversion claim.

## IV. *Declaratory Judgment*

Plaintiffs argue the trial court erred in granting summary adjudication as to their declaratory judgment claim. Plaintiffs sought declarations that Patriot had no contractual right to remove plaintiffs for "cause" and that Patriot had no contractual right to reacquire plaintiffs' membership units. The court concluded Patriot had met its burden because the claim was wholly derivative of the breach of contract claim. Plaintiffs now argue because the court erred in finding no triable issue of material fact as to the breach of contract claim, the stated reasoning for granting summary adjudication of the declaratory judgment claim was also error.

While we agree with plaintiffs that the court erred in granting summary adjudication as to the breach of contract claim, summary adjudication of the declaratory judgment claim was proper for an independent reason. Plaintiffs sought declarations only redressing alleged past wrongs, i.e., Patriot's breach of the operating agreement. However, "[t]he purpose of the declaration is to allow the parties to shape their conduct to *avoid* a breach." (See *Cordoba Corp. v. City of Industry* (2023) 87 Cal.App.5th 145, 157, italics added.) "In essence, declaratory relief operates to declare future rights, not to address past wrongs. (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th

18

1487, 1497.)" (*Monterey Coastkeeper v. Central Regional Water Quality Control Bd., etc.* (2022) 76 Cal.App.5th 1, 13.) We therefore affirm summary adjudication of the declaratory judgment claim.

## DISPOSITION

The trial court's order granting summary judgment and the resulting judgment are reversed as to Patriot. We affirm the grant of summary adjudication on the issues of (1) whether Patriot was required to permit plaintiffs to vote on each other's removal for "cause" and (2) whether Patriot was required to provide plaintiffs with advance notice of their removal for "cause." In addition, we affirm the grant of summary adjudication on the conversion and the declaratory judgment claims. We reverse the grant of summary adjudication on the issue of whether plaintiffs were removed for "cause." We remand the matter for further proceedings on this issue. The parties are to bear their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

WE CONCUR:

COLLINS, Acting P. J.

MORI, J.

19